In the Matter of INTERNATIONAL IN-STITUTE OF THE AMERICAS, INC.

Civ. No. 86–0569 (PG).

United States District Court, D. Puerto Rico.

June 30, 1986.

Felicita Jomp, Santurce, P.R., for debtor.

Charles A. Cuprill, Ponce, P.R., for trustee.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

The bankruptcy proceedings in this case were commenced on November 14, 1984, through the filing by Hermanos Barreras, Inc., Orlando Parga and Flor Amelia García of an involuntary petition under the provisions of Chapter 11 of the Bankruptcy Code (11 U.S.C. § 303). During the course of a hearing in the Bankruptcy Court it came to the knowledge of the Court that debtor, International Institute of the Americas, Inc., is a non-profit, educational institution against whom an involuntary petition could not be filed. 11 U.S.C. § 303(a).

On January 9, 1985, debtor consented to become a voluntary Chapter 11 debtor under 11 U.S.C. § 301. An order for relief under said chapter was entered on January 16, 1985.

On March 18, 1985, Mr. Pedro Vergne Roig was appointed Trustee. On June of 1985, with the approval of the Bankruptcy Court, a certain stock allegedly owned by the estate was sold to a third party. The proceeds of the sale were deposited in the Office of the Clerk of the Bankruptcy Court. Creditor Amvest agreed to the sale of the stock, reserving its right to make in the future whatever claim it may have to the proceeds of the sale.

Debtor filed an application for dismissal on September 16, 1985. The same was granted by the Bankruptcy Court on December 2, 1985, and entered on docket on December 3, 1985. On that same date judgment was entered dismissing the proceedings. At the time that order was entered there was deposited in the Bankruptcy Clerk's Office a sum in excess of $600,000. The Bankruptcy Judge distributed said sum, subject to a creditor's claim on the $600,000, as follows: $50,000 were segregated to cover additional administrative expenses that shall remain in the Registry Account of the Bankruptcy Court for a term of 30 days; $280,000 were segregated and delivered to creditor Barreras; as to the balance left from the $600,000 after the segregations mentioned above ($365,492.69), the Clerk issued and delivered a check to the Clerk of the Superior Court of Puerto Rico, San Juan Part. The Bankruptcy Court had previous to the order segregated the sum of $150,000 of which at the time the order was entered there was still in deposit with the Bankruptcy Clerk the sum of $30,000. At the end of the 30–day period the Clerk was to deliver all funds in his possession, including the bal-

ance that may remain from the original $150,000 to the Clerk of the Superior Court of Puerto Rico. The last paragraph of the Opinion and Order states:

> In view of the aforestated, and once Hermanos Barreras, Inc. is paid the amount stated above [$280,000], and once the remaining funds in the Clerk's hands, except those mentioned in the immediately preceding paragraph, are delivered to the Clerk of the Superior Court, this case shall be dismissed. From that date on Mr. Pedro Vergne Roig shall have 10 days to deliver to the debtor all the property of the estate that is presently in his possession. At the end of the said 10 day period, said Trustee shall be deemed relieved of his duties and discharged as such.

The Court shall now briefly review what has transpired before and after the order of dismissal was entered.

We shall begin with a summary of what the Bankruptcy Court did with the money from the estate followed by a brief recount of various motions pertinent to the disposition of this Opinion and Order:

On October 1, 1985, the Bankruptcy Judge issued an order entered on docket more than two months later, on December 18, 1985, whereby it directed Banco Popular to cancel certificate of deposit No. 33617 in the name of U.S. District Court by Clerk, U.S. Bankruptcy Court, in trust for debtor, case No. 84–01255, in the amount of $832,032.25. Banco Popular was further ordered to issue a manager's check payable to U.S. District Court by Clerk, U.S. Bankruptcy Court in trust for debtor in the amount of $147,676.62 and with the balance of $684,355.63 to issue a new certificate of deposit for a period of 14 days. On October 15, 1985, an order was issued[1] by the Bankruptcy Judge directing the Clerk of the U.S. Bankruptcy Court to issue a check against the Registry Account of U.S. Courts in the name of Banco Popular in the amount of $2,345.87 and further ordering that Banco Popular cancel certificate of deposit No. 34179 in the amount of $684,-355.63 and together with the $2,345.87 issue a new certificate of deposit in the amount of $686,701.50 for 21 days.

On November 5, 1985, another order was issued[2] directing the Clerk of the Bankruptcy Court to issue a check against the Registry Account of the U.S. Courts in the name of Banco Popular de Puerto Rico in the amount of $1,889.58 and further ordering that Banco Popular cancel certificate of deposit No. 34436 in the amount of $686,-701.50 and together with the check of $1,889.58 issue a new certificate deposit in the amount of $688,591.08 for a period of 21 days. On November 27, 1985,[3] the Bankruptcy Judge ordered the Clerk of the U.S. Bankruptcy Court to issue a check against the Registry Account of U.S. Courts in the name of Banco Popular in the amount of $2,904.18 and further ordered that Banco Popular cancel certificate of deposit No. 34882 in the amount of $688,-591.08 and together with the check of $2,904.18 issue a new certificate of deposit in the amount of $691,495.26 for 8 days. On December 5, 1985, the Bankruptcy Judge ordered Banco Popular to cancel certificate of deposit No. 35251 in the amount of $691,495.26 and issued manager's check for said amount in the name of U.S. District Court by Clerk, U.S. Bankruptcy Court. An order dated December 5, 1985, entered on docket on December 18, 1985, directed the Clerk of the Bankruptcy Court to issue a check against the Registry Account of the United States Courts in the name of Banco Central Corporation in the amount of $79,167.26 to purchase certificate of deposit in the name of U.S. District Court by Clerk, U.S. Bankruptcy Court in trust for International Institute of the Americas, Case No. 84–01255 for a period of 15 days.

---

**1.** Said order was entered on docket on December 18, 1985.

**2.** Said order was also entered on docket on December 18, 1985.

**3.** Similar to the other orders, this one was also entered on docket on December 18, 1985.

On December 20, 1985,[4] the Bankruptcy Judge ordered Banco Central Corporation to renew the certificate of deposit No. 05–09–08331–2 purchased on December 5, 1986, for a period of 13 days. On February 7, 1986,[5] an order was issued directing the Clerk of the Bankruptcy Court to issue a check in the name of Banco Central Corporation in the amount of $779.20 and further ordering that Banco Central cancel certificate of deposit No. 05–09–08331–2 in the amount of $79,167.26 and together with the check of $779.20 issue a new certificate of deposit in the amount of $79,946.46 for a period of 14 days. Upon the maturity of said certificate, the principal amount plus accrued interest shall be reinvested by Banco Central in a new certificate of deposit for the same length of time and at prevailing interest rate. This procedure will be followed at the maturity of each certificate unless the Bankruptcy Court orders otherwise. An order was issued on April 9, 1986, and entered on docket on April 16, 1986, directing the Banco Central Corporation to cancel Certificate Deposit No. 05–60–0042–0 in the amount of $80,649.85 and to issue a manager's check for said amount in the name of U.S. District Court.

Another order was issued on April 4, 1986, and entered on docket on April 16, 1986. This order directed the Clerk of the U.S. Bankruptcy Court to issue a check in the name of Banco Central Corporation in the amount of $89,903.63 to purchase Time Deposit Account.

On May 6, 1985, debtor had filed a motion in the Bankruptcy Court to declare Trustee's position vacant and for appointment of examiner. Almost four months later, on August 30, 1985, and continued on September 3, 1985, the Bankruptcy Judge celebrated a hearing on debtor's motion. On September 20, 1985, entered on docket on September 24, 1985, the U.S. Bankruptcy Judge issued an order denying debtor's motion to declare vacant the position of the Trustee, Pedro Vergne Roig and for the appointment of an examiner. Debtor filed

a Notice of Appeal on October 4, 1985, of the order denying removal of the Trustee. On October 25, 1985, debtor appellant filed the designation of the items to be included in the record on appeal and statement to be presented on appeal. On November 13, 1985, debtor appellant filed a motion for stay pending appeal of the Bankruptcy Court's order denying removal of trustee. Therein, debtor alleges that the continued acts of the trustee are detrimental to the reorganization of the debtor since they are leaving debtor without funds and furthermore that although the trustee was entrusted with reorganization of the debtor, he continuously used the term of liquidation and that the closing of the record services to the students was to be the final closing of debtor tantamount to liquidation without a liquidation plan. Almost one month later, on December 9, 1985, entered on docket on December 12, 1985, the Bankruptcy Judge entered a footnote order denying the stay because it was moot due to the dismissal of the case.

Debtor had also filed a notice of appeal on October 4, 1985, of an order dated September 20, 1985, whereby the Bankruptcy Court granted Trustee Vergne Roig disbursement of $36,850 to pay moving expenses. However, debtor did not file the designation of record on appeal and the appeal was dismissed.

Various applications for compensations have been filed by the trustee, the trustee's attorney, debtor's attorney, professional persons, a C.P.A. and others. Most of the applications have been granted. On December 26, 1985, debtor filed a motion in opposition to any further disbursements or approval of administrative expenses because the trustee had failed to pay various items such as the telephone bills and the internal revenue service. Furthermore, debtor opposes the payments to professional persons McCloskey and Portela.

On January 24, 1986, debtor filed a motion objecting to any further determination

---

4. The order was entered on docket on February 20, 1986.

5. The order was entered on docket on February 24, 1986.

by the Bankruptcy Court of administrative claims. Debtor alleges that the claims are in excess of what the Trustee could incur in and that the claims exceed the assets of the debtor. Furthermore, debtor reiterates that the trustee, during his trusteeship, continued to encumber the assets of the debtor and that he was named to reorganize debtor, which he never did. Debtor alleges that the Trustee did not present any plan to reorganize debtor, kept opposing all plans submitted by debtor, kept incurring in expenses and did not take the determination to liquidate the estate.

On January 31, 1986, debtor filed an application for payment of administrative expenses totalling $176,385.40.

On March 31, 1986, debtor filed a motion for reimbursement of funds illegally used for administrative expenses. Therein, debtor alleges that the trustee transferred funds, the sum of $34,664, on deposit in the National Student Loan Fund Account.

Notices of appeal of two orders allowing claims for administrative expenses were filed by debtor and entered on the Bankruptcy Court's docket on April 17, 1986. Debtor subsequently filed in the Bankruptcy Court on April 30, 1986, its designation of the items to be included in the record on appeal and statement of issues.

On April 21, 1986, an order was entered withdrawing the whole bankruptcy case to the District Court and staying all matters pending before the Bankruptcy Court.

On April 24, 1986, debtor filed an informative motion in relation to its application for payment of administrative expenses wherein it states that due to the fact that it could not inspect the file of the proof of claims it would inspect the same independently and inform the Bankruptcy Court of the analysis of the proof of claims pending in the case. The report was to be filed on April 29th and the hearing was to be held on the 12th of May, 1986.

On April 28, 1986, Trustee Vergne Roig filed a Notice of Cross-Appeal to District Court of an order dated March 20, 1986, and entered on docket on April 8, 1986, granting the application for compensation of debtor's counsel, Felícita Jomp, and the motion of Villa Investment Corp. for the payment of administrative rent. On April 30, 1986, cross-appellant, Trustee, filed the designation of the contents for the inclusion in the record on appeal and statement of issues.

On May 5, 1986, Trustee's attorney filed a Third Addendum to Final Application for Compensation.

On May 19, 1986, Trustee filed an interrogatory asking debtor to answer seventeen questions related to debtor's Motion for Reimbursement of Funds Illegally Used for Administrative Expenses. Questions numbers 6 and 15 call for the name, home and business address and telephone number of all expert witnesses and other witnesses debtor expects to call at the hearing on the merits of the motion. From the brief review presented as to the motions pending and as to others already decided by the Bankruptcy Court, it is evident that a lot of controversy exists as to the payment of administrative expenses and as to the trusteeship of the estate.

■■■ The Bankruptcy Court is deemed a unit of the District Court, 28 U.S.C. § 151, and the District Court has "original and exclusive jurisdiction of all bankruptcy cases," 28 U.S.C. § 1334(a), *In Re Morahan*, 53 B.R. 489, 492 (D.C.Me.1985), including "exclusive jurisdiction of all of the property, wherever located, of debtor as of the commencement of such case [case under Title 11], and of the estate." 28 U.S.C. § 1334(d); *Arthur J. Cournoyer d/b/a Cournoyer's Used Truck Parts v. Town of Lincoln*, 790 F.2d 971, (1st Cir.1986); *In Re Alabama Fuel Sales Co., Inc.*, 45 B.R. 365 (D.C.Ala.1985). Because the Court has exclusive jurisdiction of the debtor's property under 28 U.S.C. § 1334(d), it has the power to supervise and oversee that property.[6] Section 105(a) of Title 11, U.S.C.,

---

**6.** A district court may upset prior orders of a bankruptcy court in the exercise of its jurisdic-

tion to modify such orders through its supervi-

grants the Court the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." [7] The purpose of section 105(a) is to give the Court the power to protect its custody of the estate and the administration thereof. *Cf., In Re Northern Boneless Meat Corp.*, 9 B.R. 27 (W.D. N.Y.1981); *Hernández v. Borgos*, 343 F.2d 802, 807 (1st Cir.1965). There are still funds of the estate in a Time Deposit Account in Banco Central Corporation. As long as there is an asset in the Court's control, the estate may be considered to be in administration. Jurisdiction, once attached, continues inherent to the Court's authority to supervise the property of debtor and of the estate until the case is closed. *Cf., In Re Fortner Oil Field Services, Inc.*, 49 B.R. 9 (N.D.Texas 1984). Concomitant with the exclusive jurisdiction of all property of the debtor and of the estate, and with its supervisory power over the same, the District Court has the duty "to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt's estate." *cf., Pepper v. Litton*, 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939).

■ 11 U.S.C. § 1106 requires the trustee to fulfill numerous duties including the filing of a plan of reorganization or a report of why a plan would not be filed or recommend the conversion or dismissal of the case. The order appointing Mr. Vergne Roig as trustee specifically charged him with continuing "debtor's reorganization efforts, which include the procurement of accreditation by the various administrative bodies entrusted with the power to issue licenses authorizing the operation of an educational institution in Puerto Rico." A reorganization trustee is the moving force in the formulation and preparation of reorganization plans. *Avery v. Fischer*, 360 F.2d 719 (5th Cir.1966). Whether a reorganization plan is feasible is a subject for determination after trustee has investigated debtor's financial condition, business and desirability of continuance thereof, has given creditors an opportunity to submit suggestions and has submitted to the court his conclusions upon the subject. *In Re 325 East 72nd Street*, 53 F.Supp. 997 (D.C. N.Y.1944).

An examination of the file does not reveal that the Trustee filed a plan of reorganization or recommended conversion or dismissal of the case.

■ A trustee is entitled to notice of a proposed dismissal of a bankruptcy case so that he may intervene and obtain, *prior* to the dismissal, reimbursement or *adequate* security for any expenses he might have incurred in the course of his administration of the bankrupt's property. (emphasis supplied) 3 Collier on Bankruptcy (14th ed.) ¶ 59.34[2.2]; *In Re Salaberry*, 5 Am.B.R. 847 (D.C.Cal.) (bankrupt's petition for dismissal was denied without prejudice to its renewal upon filing with the Court the certificate of the referee showing that all costs and expenses incurred by the trustee in the administration of the estate have been paid). In cases of voluntary petitions the bankrupt's subsequent request to dismiss will not be granted unless he first pays the expenses legitimately incurred by a trustee. 3A Collier on Bankruptcy (14th ed.) ¶ 62.34 at 1633–34. In the case at bar the Bankruptcy Court granted the dismissal without first reimbursing the administrative expenses or without first obtaining adequate security for said expenses. Furthermore, in the order of dismissal of the case, the Bankruptcy Court did not require the Trustee to make a final report and

---

sory or equity power. *Friedman v. Snelling*, 526 F.2d 1346 (1st Cir.1975).

**7.** The amendment to section 105(a), effective July 10, 1984, struck out "bankruptcy" preceding "court". This is in harmony with the amendment to 28 U.S.C.A. § 1334(d), effective on same date as above, which grants to the district court in which a case under Title 11 is commenced or is pending the exclusive jurisdiction of the property of the debtor and of the estate.

account of the administration of the estate.[8]

The Court is now faced with a dismissed bankruptcy case where a picture of inequitable dealings by the Trustee in the administration of the estate[9] has been presented by debtor, where various controversies have been provoked by the applications for compensation filed as administrative expenses and where the possibility exists that there may not be sufficient funds to pay the same.

In view of the lack of compliance with the Bankruptcy Rules and law and guided by the cardinal principles of equity jurisprudence to the end that injustice or unfairness is not done in the administration of the bankrupt's estate, *Matter of Multiponics, Inc.*, 622 F.2d 709 (5th Cir.1980), *quoting, Herzog & Zweibel,* 15 Vand.L. Rev. at 85, and pursuant to 11 U.S.C. § 105(a), the Court will hereby vacate *nunc pro tunc* the Bankruptcy Judge's Opinion and Order dismissing the bankruptcy proceedings.

WHEREFORE, in view of the above, the Court ORDERS that the Opinion and Order issued by U.S. Bankruptcy Judge Antonio Hernández on December 2, 1985, and entered on docket on December 3, 1985, dismissing bankruptcy case No. 84–01255 be and is hereby VACATED *nunc pro tunc* to the date it was issued.

IT IS SO ORDERED.

---

**8.** Without a final report and account, it is not possible to determine the compensation which would be allowable to the Trustee since 11 U.S.C. § 326 provides that it be based on "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor but including holders of secured claims."

**9.** A trustee appointed by a court in a reorganization proceeding is a fiduciary who has the duty to protect and conserve property in his possession for the benefit of creditors. *Matter of Halux, Inc.,* 665 F.2d 213 (8th Cir.1981); *Sherr v. Winkler,* 552 F.2d 1367 (10th Cir.1977).