In re INDIAN MOTOCYCLE ASSOCIATES III LIMITED PARTNERSHIP, Indian Motocycle Associates Limited Partnership, Debtors.

Bankruptcy Nos. 92–43818–JFQ, 92–43819–JFQ.

United States Bankruptcy Court, D. Massachusetts.

Jan. 6, 1994.

---

Paul Salvage, Bacon & Wilson, Springfield, MA, for Indian Motocycle Associates III Ltd. Partnership and Indian Motocycle Associates Ltd. Partnership.

Mark Cress, Bulkley, Richardson and Gelinas, Springfield, MA, for Massachusetts Housing Finance Agency.

Peter Stocks, Worcester, MA, for U.S. Trustee.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

The Massachusetts Housing Finance Agency ("MHFA") moves for an order requiring the chapter 11 debtor, Indian Motocycle Associates III Limited Partnership (the "Debtor"), to repay funds the Debtor disbursed from its operating income prior to the filing of its chapter 11 petition on December 15, 1992. The Debtor used the funds, totalling about $65,000, for the payment of a retainer to its counsel in this chapter 11

proceeding. MHFA contends this was prohibited by the terms of the parties' agreement.

MHFA has been granted relief from the automatic stay since the filing of the present motion. Prior to then, the Debtor owned and operated an apartment building at 837–847 State Street, Springfield, Massachusetts. It derives its name from a company which operated a business in the building prior to its conversion into apartments.

On October 30, 1987, a predecessor owner of the property executed and delivered to MHFA a note in the sum of $8,643,600, a mortgage on the property as security, and an agreement entitled "Regulatory Agreement for Multi–Family Housing Projects Coinsured by HUD" ("Regulatory Agreement"). Because of the payment guaranty on the project provided by the United States Department of Housing and Urban Renewal ("HUD"), the Regulatory Agreement contained various provisions required by federal regulations promulgated pursuant to the National Housing Act. The Debtor acquired the property in 1989 and assumed all financial obligations of the former owner under the note, mortgage and Regulatory Agreement.

As provided in paragraph B(3)(b) of the Regulatory Agreement, the owner of the project was permitted to:

Use Project funds only to:

(1) pay amounts required by the Mortgage;

(2) make required deposits to the Reserve for Replacements

(3) pay reasonable expenses necessary to the operation and maintenance of the Project;

(4) pay distributions of Surplus Cash permitted by Paragraph B(4)(a) of this Agreement and as allowed by the Mortgagee pursuant to the Act; and

(5) repay Owner advances authorized by the Secretary's administrative procedures and, unless such advances have been made in an emergency to save or preserve life, property or essential services, approved by the Mortgagee in writing prior to any such advances.

Advances may be made only when, in the estimation of the Mortgagee, Project funds are available for such repayment. The Mortgagee may consider allowance of repayment of Owner advances from Project funds on a case-by-case basis.

Project funds may not be used to liquidate liabilities related to the construction of the Project, other than the Mortgage, unless the Mortgagee authorizes such use.

The parties devote their briefs to whether the Debtor's prepetition payment of $65,000 to its counsel for a retainer was prohibited by the Regulatory Agreement. The question has two components—whether the funds used were "Project funds," and, if so, whether the disbursement was for a purpose authorized by paragraph B(3)(b).

■ The Regulatory Agreement defines "Project funds" as "all revenues from operations and earnings on deposits of Project funds and, unless otherwise provided, earnings on escrows." The Debtor contends it made the disbursements from monies advanced to the Debtor or its predecessor by its managing general partner and the partner's principals. As disclosed by Exhibit A to the Debtor's response, no advances were made to the Debtor after July of 1990, except advances for fees paid to Coopers & Lybrand in 1991 and 1992. The funds at issue here came from an operating account to which current rent receipts were deposited. I find the disbursement was from "Project funds."

■ The disbursements were not authorized by paragraph B(3)(5) of the Regulatory Agreement. If the disbursements are considered payments for the benefit of the Debtor's owners, they do not qualify as repayment of owner advances under the terms of subparagraph (5). To so qualify, an advance must have been approved in writing by HUD prior to being made, unless "made in an emergency to save or preserve life, property or essential services....." The Debtor has established neither such an emergency nor written authorization of HUD. The Debtor's reliance on a letter of June 4, 1990 from MHFA is misplaced. The letter is not from the "Secretary" (of HUD), and it does not purport to authorize advances. It merely

expresses concern about the Debtor's financial condition.

■ By failing to argue the point, the Debtor appears to concede the payments are not "reasonable expenses necessary to the operation and maintenance of the Project" within the meaning of subparagraph (3). They are not. Except for legal fees incurred for routine matters in everyday operations, the case law establishes that legal expenses do not come within the meaning of such a provision in a HUD regulatory agreement. *E.g., United States v. Frank*, 587 F.2d 924 (8th Cir.1978) (requiring general partner of owner to repay legal fees paid for conversion of project to alternate use); *Thompson v. United States*, 408 F.2d 1075 (8th Cir.1969) (affirming judgment against individual partners of owner for having authorized payment of legal fees incurred in connection with acquisition of project property).

■ But all of this is irrelevant in the context of this bankruptcy case and MHFA's present motion. MHFA asserts rights only against the Debtor. Those rights are clear. It has a claim in the amount of the balance due under the 1987 mortgage note. The Debtor is in breach of that obligation. Breach of the Regulatory Agreement is immaterial with respect to MHFA's rights against the Debtor. That agreement was merely designed to protect the note obligation. Its breach by the Debtor is analogous to a debtor converting collateral. Indeed, MHFA argues that the payments made came from its collateral in the form of rents, which is true. The Debtor's breach of the Regulatory Agreement or conversion of collateral does not change the amount of MHFA's claim against the Debtor. The Debtor is in default in the payment of that claim. Any conversion merely makes a portion of the claim sound in tort as well as in contract. That may have nondischargeability consequences for an individual debtor, but not here.

MHFA's rights against its partners or the law firm that received the retainer are not before us. The *Frank* and *Thompson* decisions cited above are not on point for that reason. They involved suits against partners of the borrower. The partners were held liable for having obligated themselves to be bound by the provisions of the Regulatory Agreement.

MHFA cites bankruptcy decisions which have relied upon the *Frank* and *Thompson* line of cases. Only one, however, discusses the propriety of their application in bankruptcy. That decision, *In re Michigan Beach Apartments*, 61 B.R. 446 (Bankr. N.D.Ill.1986), involved a request to use cash collateral to pay attorneys fees in violation of a HUD regulatory agreement, not a claim against the debtor for having paid extraordinary legal expenses prior to the bankruptcy petition. The court acknowledged the impact of bankruptcy on the parties' rights. Rather than basing its decision on the regulatory agreement, the court relied upon section 506(c) of the Code in denying the request.

The other bankruptcy decisions cited by MHFA are not persuasive. None discusses the concept of a claim in bankruptcy. In some, the court entered an order against the debtor to "restore" to the estate a prepetition payment for legal expenses. The courts seemed to assume that breach of a HUD regulatory agreement creates a separate claim enjoying super priority. *See In re EES Lambert Assoc.*, 63 B.R. 174 (N.D.Ill. 1986); *In re Garden Manor Assoc.*, 70 B.R. 477 (Bankr.N.D.Cal.1987); *In re Hil'Crest*, 50 B.R. 610 (Bankr.N.D.Ill.1985).

■ Other bankruptcy decisions relied upon by MHFA involve proceedings against a debtor's attorneys or partners to recover prepetition payments of legal expenses made in violation of the applicable regulatory agreement. *See In re Tampa Bay Briarwood Assoc. Ltd.*, 118 B.R. 126 (Bankr. M.D.Fla.1990); *In re Two–KMF Development Ass'n.*, 63 B.R. 149 (Bankr.N.D.Ill. 1985). That is not the situation here. MHFA's motion seeks only an order against the Debtor. To collect its $65,000 from the Debtor's law firm, MFHA would have to bring an adversary proceeding against it. Fed.R.Bankr.P. 7001. *Compare* Fed. R.Bankr.P. 2017 (authorizing recovery by motion of "excessive" attorneys fees paid by debtor). Although the Debtor's partners *may* have bound themselves to the Regulato-

ry Agreement, it is unlikely that is so as to the law firm. In any event, I would likely abstain from any such action because it would involve only rights among nondebtors in a case having no prospects of reorganization. I have previously granted MHFA relief from stay.

MHFA also requests relief in the form of segregation of rents, an accounting and adequate protection of its mortgage interest. These requests are moot in light of the prior order vacating the automatic stay.