INDIAN MOTOCYCLE ASSOCIATES
III LIMITED PARTNERSHIP,
Appellant,

v.

MASSACHUSETTS HOUSING FINANCE
AGENCY, Appellee.

No. 94–2233.

United States Court of Appeals,
First Circuit.

Heard Aug. 2, 1995.

Decided Oct. 2, 1995.

Paul R. Salvage, with whom Susan Luttrell Burns and Bacon & Wilson, P.C., Springfield, MA, were on brief, for appellant.

Kevin C. Maynard, with whom Mark D. Cress and Bulkley, Richardson and Gelinas, Springfield, MA, were on brief, for appellee.

Before TORRUELLA, Chief Judge, CYR and STAHL, Circuit Judges.

CYR, Circuit Judge.

Indian Motocycle Associates III Limited Partnership, a chapter 7 debtor, appeals from a district court order reversing a bankruptcy court decision denying appellee Massachusetts Housing Finance Agency's ("MHFA") motion to compel the chapter 7 debtor to restore diverted cash collateral to the chapter 7 estate. We vacate the district court order and remand to the bankruptcy court for further proceedings.

# I

## BACKGROUND

### A. *The Regulatory Agreement*

In 1987, MHFA loaned Indian Motocycle Associates Limited Partnership ("Indian Mo-

tocycle") $8.6 million to develop low-income housing in Springfield, Massachusetts [hereinafter: "the Project"]. Under a program authorized by the National Housing Act ("NHA"), 12 U.S.C. §§ 1701, 1709, 1715k *et seq.* (1994); 24 C.F.R. § 250.1 (1994), the United States Department of Housing and Urban Development ("HUD") coinsured the non-recourse mortgage loan.[1] In order to qualify for HUD coinsurance, Indian Motocycle signed a "Regulatory Agreement," obligating it to comply with pertinent HUD regulations and conditions whereby the individual Indian Motocycle partners assumed personal liability "for funds or property of the Project which come into their hands and which they are not entitled to retain; and ... for their own acts and deeds or acts and deeds of their authorized agents that are in violation of the provisions of this Agreement." The Regulatory Agreement is incorporated into the mortgage by express reference.

In addition to conveying a first mortgage on all real property belonging to the Project, Indian Motocycle assigned all its Project leases, rents, profits and income to MHFA "for the purpose of discharging the [note]." *See* Mortgage ¶ 4; 12 U.S.C. § 1715k(d)(2)(A). MHFA in turn authorized Indian Motocycle to collect and apply Project rents to enumerated purposes, including loan repayments and "reasonable expenses necessary to the operation and maintenance of the Project." Regulatory Agreement ¶ 3(b). Indian Motocycle's right to collect Project rents terminated upon default. *See* Mortgage ¶ 4. In the event the debtor were to breach the Regulatory Agreement, MHFA or HUD would be entitled to seek specific performance, injunctive relief, or the appointment of a receiver for the Project. *See* Regulatory Agreement ¶¶ 17–18. The mortgage and Regulatory Agreement were duly recorded by MHFA.

In 1989, Indian Motocycle transferred its ownership interest in the Project to Indian Motocycle Associates III Limited Partnership, which assumed the MHFA note and

---

1. NHA coinsurance permits the private lender to assign its note and mortgage to HUD if unable to collect from the borrower. *See* 12 U.S.C. § 1710.

mortgage; in August 1992, it defaulted. MHFA promptly tendered notice of default but took no immediate steps to acquire possession of the Project (as by foreclosure) or the rents (as by appointment of a receiver). Meanwhile, Indian Motocycle Associates III Limited Partnership had withdrawn $65,000 from the rents on deposit in the Project operating accounts, with which, *inter alia*, it retained counsel in contemplation of the commencement of a voluntary chapter 11 proceeding ($35,000 retainer) and an accountant (Coopers & Lybrand) to prepare a prepetition audit of the Project ($20,000).[2] On December 15, 1992, following these disbursements, Indian Motocycle Associates III Limited Partnership (hereinafter: "debtor") filed its chapter 11 petition and continued to operate the Project as a debtor in possession.[3] Pursuant to the Regulatory Agreement, MHFA filed a motion to compel the debtor "to restore [the $65,000 in cash collateral] improperly diverted from the [chapter 11] estate in violation of Title II of the [NHA]."[4]

## B. The Bankruptcy Court Decision

The bankruptcy court ruled that the unauthorized prepetition transfer of MHFA cash collateral to retain chapter 11 counsel violated the Regulatory Agreement. *In re Indian Motocycle Assocs. III Ltd. Partnership*, 161 B.R. 865, 867–68 (Bankr.D.Mass.1994).[5] The court nonetheless denied the motion to compel the debtor to restore the $65,000 to MHFA, noting that Regulatory Agreement violations by the debtor were "irrelevant," given that the motion to compel purported to assert MHFA's legal rights against the debtor only and that no adversary proceeding had

yet been commenced against the debtor's general partners, attorneys or accountants, the transferees in possession. *Id.* at 868.

During the bankruptcy court proceedings, MHFA had relied on case law to the effect that a debtor's unauthorized prepetition disbursement of rents securing an NHA-insured loan warrants postpetition relief compelling the debtor and/or its attorneys to restore the encumbered funds to the debtor estate. *Id.* The bankruptcy court reasoned, however, that the requested relief would undermine the Bankruptcy Code distribution scheme by entitling $65,000 of the HUD/MHFA unsecured claim against the chapter 11 estate to "super priority" status.

On intermediate appeal, the district court reversed and remanded to the bankruptcy court for entry of an order compelling the "[d]ebtor to restore the distributions diverted from the estate." *Massachusetts Hous. Fin. Agency v. Indian Motocycle Assocs. III Ltd. Partnership (In re Indian Motocycle Assocs. III Ltd. Partnership)*, 174 B.R. 351, 357–58 (D.Mass.1994) (citing Bankruptcy Code § 105(a), 11 U.S.C. § 105(a) (empowering the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title")).

## II

## DISCUSSION

The debtor contends that the bankruptcy court correctly determined that it lacked authority under Bankruptcy Code § 105(a) to order a chapter 11 debtor—even one who concedes that it improperly diverted a secured creditor's collateral shortly before fil-

2. An additional $5,000 was used to retain counsel to prepare and file a proof of claim *in behalf* of Indian Motocycle Associates III Limited Partnership in an unrelated bankruptcy case. Another $5,000 was transferred to a business owned by a principal of the debtor's managing general partner, for a purpose not disclosed in the appellate record. *See infra* notes 18 & 20.

3. The chapter 11 proceeding has since been converted to chapter 7, *see* Bankruptcy Code § 1112, 11 U.S.C. § 1112, and a chapter 7 trustee has been appointed, *id.* § 702.

4. At the same time, MHFA sought to sequester all postpetition rents. Thereafter, on June 23, 1993,

prior to denying the MHFA motion to compel, the bankruptcy court granted an interim MHFA motion for relief from the automatic stay. *See* Bankruptcy Code § 362(d), 11 U.S.C. § 362(d). MHFA represents that it has since foreclosed upon all collateral except the monies at issue on appeal.

5. The bankruptcy court traced the source of the contested monies directly to Project rents, as distinguished from individual partner advances as suggested by the debtor. *Id.* at 867. On the other hand, the court mistakenly characterized the entire $65,000 distribution as a retainer fee for legal services. *Id.* at 865; *see infra* note 6.

ing its chapter 11 petition—to return the collateral (or its monetary equivalent) to the chapter 11 estate. The debtor argues that it no longer retained a property "interest" in, or control over, the diverted collateral on the date it filed its chapter 11 petition and, accordingly, the collateral never became property of the chapter 11 estate amenable to administration. *See* Bankruptcy Code § 541(a)(1), (6), 11 U.S.C. § 541(a)(1), (6) (providing that estate is comprised of "all legal or equitable interests of the debtor in property *as of the commencement of the case*," including "rents ... from [real] property of the estate") (emphasis added). Further, the debtor says, its diversion of the encumbered rents did not alter the *amount* of MHFA's claim against the debtor estate, which remained the balance outstanding on the note at the date of the chapter 11 petition. Finally, the debtor argues that the bankruptcy court correctly declined to follow those courts which have ordered chapter 11 debtors in possession to restore to the debtor estate diverted NHA–encumbered rents, *see infra* Section II.A.2, since those cases did not involve a non-federal agency like MHFA, nor did those courts cite to legislative history indicating that Congress intended that NHA policy override the debtor protection policy underlying the Bankruptcy Code, including the right to utilize monies in the debtor's possession to fund prepetition retainers of chapter 11 counsel.

## A. *Injunctive Relief*

 We review challenged rulings of law by the district court *de novo* and contested findings of fact by the bankruptcy court for clear error. *See In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir.1992).[6] A bankruptcy court's decision granting or denying injunctive relief pursuant to Bankruptcy Code

§ 105(a) is reviewed only for abuse of discretion. *See, e.g., Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Arms, Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). "Four principal factors govern the appropriateness of permanent injunctive relief: (1) whether the plaintiff has prevailed on the merits; (2) whether the plaintiff will suffer irreparable injury absent injunctive relief; (3) whether the harm to the plaintiff outweighs any harm threatened by the injunction; and (4) whether the public interest will be adversely affected by the injunction." *Id.* The present appeal implicates only the first two factors.

### 1. *Injury*

 Although the bankruptcy court ruled that the debtor's prepetition transfer of MHFA's cash collateral constituted a conversion, it concluded that injunctive relief was unwarranted since the amount owed MHFA by the chapter 11 estate remained the same. To the extent this ruling suggests that MHFA sustained no cognizable injury, we disagree. Since there is no indication that MHFA's claim was over-secured, the conversion by the debtor of the $65,000 cash collateral reduced MHFA's secured claim by that amount, leaving MHFA with an unsecured claim for $65,000. *See* Bankruptcy Code § 506(a), (b), 11 U.S.C. § 506(a), (b); *see also id.* § 541(a)(6) ("Such estate is comprised of ... [p]roceeds, product, offspring, *rents*, or profits of or from property of the estate [viz., the Project]") (emphasis added).

The advantage to holding a secured claim to these rents in the chapter 11 proceeding is not to be underestimated. Since the rents constituted "cash collateral" securing the MHFA note, *id.* § 363(a) ("cash collateral" includes "cash ... whenever acquired in which the estate and an entity other than the estate have an interest and includes ...

---

6. On appeal, neither party challenges the bankruptcy court findings that (1) the entire $65,000 was disbursed as a retainer for legal services, and (2) the entire disbursement breached the Regulatory Agreement. Although this first finding is not an accurate reflection of the record evidence, *cf. supra* note 2 & accompanying text; note 5, it does not infect the legal conclusions reached by the bankruptcy court, nor our decision on appeal. Nor need we address the bankruptcy court ruling that *these* disbursements, as a

matter of law, did not constitute "reasonable expenses necessary to the operation and maintenance of the Project." *In re Indian Motocycle Assocs. III Ltd. Partnership*, 161 B.R. at 868 (citing *United States v. Frank*, 587 F.2d 924 (8th Cir.1978) (legal fees not "reasonable expenses" under HUD regulatory agreement)). Similarly, we decline to consider whether the prepetition disbursements for accounting services violated the Regulatory Agreement, since the bankruptcy court made no relevant findings.

rents...."); *cf. id.* § 552(b) (governing enforceability of prepetition security interest against postpetition rents), the rents could not have been expended or transferred without MHFA consent, *id.* § 363(c)(2)(A), *and* bankruptcy court authorization conditioned on "adequate protection" for MHFA's security interest, *id.* §§ 363(c)(2)(B), 361, 363(e). Thus, restoration of the converted cash collateral to the chapter 11 estate would have represented neither an empty judicial exercise, nor a windfall or "super priority" to MHFA, but appropriate recognition of the valuable legal advantage enjoyed by the holder of a secured claim in a bankruptcy proceeding.

Nevertheless, we do not think the bankruptcy court ruling should be interpreted simply as a determination that secured NHA lenders in these circumstances neither sustain cognizable injury nor have any recourse for recovering their collateral, but rather as a determination that MHFA *prematurely* sought extraordinary injunctive relief against the *wrong party*—the chapter 11 debtor— without first attempting to exhaust other available remedies against nondebtors.

### 2. "Irreparability" of Injury; Adequacy of Remedy at Law

Every court which has considered the question has determined that the NHA empowers HUD to enforce its prepetition rights under a Regulatory Agreement notwithstanding the initiation of a chapter 11 proceeding by or against the NHA borrower. *See, e.g., In re EES Lambert Assocs.,* 43 B.R. 689, 691 (Bankr.N.D.Ill.1984), *aff'd,* 63 B.R. 174 (N.D.Ill.1986); *In re Marion Carefree Ltd. Partnership,* No. 93–33011, 1994 WL 115911, 1994 Bankr.LEXIS 398, at *8–9 (Bankr.N.D.Ohio Mar. 17, 1994); *In re Tampa Bay Briarwood Assocs., Ltd.,* 118 B.R. 126, 128–29 (Bankr.M.D.Fla.1990); *In re Garden Manor Assocs.,* 70 B.R. 477, 486

(Bankr.N.D.Cal.1987); *In re TWO–KMF Dev. Assoc.,* 63 B.R. 149, 151 (Bankr.N.D.Ill. 1985); *In re Hil'Crest Apartments,* 50 B.R. 610, 613 (Bankr.N.D.Ill.1985). Three principal grounds appear to support postpetition enforcement of the NHA lender's prepetition contract remedies notwithstanding the fact that the debtor no longer has possession of, or access to, the precise collateral it diverted prior to the petition.

First, the debtor's own partners are the parties principally benefited by the prepetition diversion of the HUD collateral—most notably in this case the fees for retaining professional assistance in fending off any MHFA foreclosure, thereby safeguarding their personal financial investments [7] at the expense of low-income Project residents—the intended principal beneficiaries of the NHA. *See In re Garden Manor,* 70 B.R. at 485; *In re Hil'Crest Apartments,* 50 B.R. at 612; *In re EES Lambert,* 43 B.R. at 690. But for the unauthorized diversion, the rents normally would have been applied, as appropriate, toward Project maintenance. *See In re Garden Manor,* 70 B.R. at 483, 485 (regulatory agreement is not an "executory contract" subject to rejection by debtor) (citing Bankruptcy Code § 365).

Second, the assignment-of-rents provision in the Regulatory Agreement is not merely a term in a private loan agreement, but a contractual precondition to coinsurance which Congress expected HUD to enforce *in the public interest. See* 12 U.S.C. §§ 1709, 1715k, 1715v(c)(4) (listing numerous restrictions on NHA mortgagors). Permitting partnership debtors, or their individual partners, to divert public funds with any degree of impunity threatens significant depletion of the treasury, *see In re Garden Manor,* 70 B.R. at 483, and ultimately undercuts public confidence in the efficacy of federal housing, lending, and insurance programs, thereby subverting Congress's announced intention to

---

7. The NHA allows HUD to coinsure non-recourse mortgages under which the partners are relieved from individual liability for the partnership obligation under the note. But the NHA conditions that relief on the partners' agreement to assume personal liability "for funds or property of the Project which come into their hands and which they are not entitled to retain; and ... for their

own acts and deeds or acts and deeds of their authorized agents that are in violation of the provisions of this Agreement." *See In re Hil'Crest Apartments,* 50 B.R. at 612–13 (partners relieved of personal liability on partnership obligation in return for their agreement to restrictions on transfer of rents).

promote private construction of low-income housing. *Id.*

Third, these cases point out that there is no inherent inconsistency between the policies of the NHA and the Bankruptcy Code, in that the partnership debtor, and its individual partners, remain free to retain chapter 11 counsel provided they do not fund their retainers with the NHA lender's cash collateral. *Id.* at 482, 486; *In re TWO–KMF*, 63 B.R. at 151; *In re Hil'Crest Apartments*, 50 B.R. at 612.

Notwithstanding the strong judicial support for these general policy considerations, however, we are given great pause at the prospect of fashioning extraordinary injunctive relief absent *either* demonstrated compliance with the explicit requirements of the enabling provision in the Bankruptcy Code, *see* 11 U.S.C. § 105(a), *or* some clear indication in the NHA that Congress envisioned such an accommodation between the NHA and the Bankruptcy Code. Thus, we think it is not enough simply to point to the importance of safeguarding the integrity of the NHA loan program, where neither the NHA, the Regulatory Agreement entered into pursuant to the NHA, nor the Bankruptcy Code itself so much as intimates that a bankruptcy court may fashion the extraordinary "reimbursement" relief sought by MHFA.

No matter how compelling the public policy reasons for formulating such extraordinary relief, it must be recognized that the right and remedy are *judge-made.* Bankruptcy courts must be especially cautious about embarking upon a lawmaking exercise in circumstances where the injured party has neither demonstrated that it has exhausted, nor even *pursued,* efficacious alternative forms of relief which, if available, might well preclude a finding that the relief sought from the bankruptcy court is either "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Bankruptcy Code § 105(a), 11 U.S.C. § 105(a). *See generally Lopez v. Garriga,* 917 F.2d 63, 68 (1st Cir. 1990) (noting that injunction-seeker must first show that he has "no adequate remedy at law"); *see also Baker v. United States,* 27 F.2d 863, 875 (1st Cir.1928) ("Where courts intrude into their decree their opinions on questions of public policy, they in effect constitute the judicial tribunals as law-making bodies in usurpation of the powers of the Legislature.") (citation omitted).[8] We therefore decline to endorse the MHFA's request for extraordinary injunctive relief under Bankruptcy Code § 105(a), absent any showing or appearance that it is either "necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *See* Bankruptcy Code § 105(a), 11 U.S.C. § 105(a).

## B. *Alternative Remedies*

MHFA has not demonstrated that it is without other viable remedies against the debtor's general partners, chapter 11 counsel, and/or its accounting firm, for restoring the diverted collateral or its equivalent.

### 1. *The General Partners*

Whether or not it perfected its lien in the prepetition rents, *see infra* Section II.B.2, MHFA could have sued the debtor's general partners for the value of the diverted collateral (or, at the very least, for any deficiency between the value of its collateral and any amount recovered by MHFA on its $65,000 unsecured claim against the chapter 11 estate), based on the Regulatory Agreement provision that expressly obligates the partners "for funds or property of the Project which come into their hands and which they are not entitled to retain; and ... for their

---

8. Of course, federal courts may be expected to engage in lawmaking where Congress "ambiguously addresses" an issue in general terms, but deliberately leaves "an interstice" to be filled by the courts in conformity with the purposes of the statute. *See Conille v. Secretary of Hous. and Urban Dev.,* 840 F.2d 105, 110 n. 6 (1st Cir. 1988). This principle is of little utility in the instant case, however, for two principal reasons. First, there is no apparent interstice in the NHA, which expressly prescribes severe criminal penalties for violating HUD Regulatory Agreements, *see* 12 U.S.C. § 1715z-19 ($250,000 fine, 5–years' imprisonment), thereby providing a powerful deterrent to unauthorized prepetition diversions of HUD collateral by debtors. Second, the "reimbursement" remedy requested by MHFA not only necessitates a judicial assessment of NHA policy, but of any conflicting Bankruptcy Code policy. We do not regard this as an appropriate invitation to engage in judicial lawmaking, except as a last resort.

own acts and deeds or acts and deeds of their authorized agents that are in violation of the provisions of this Agreement." *See, e.g., Austin v. Unarco Indus., Inc.,* 705 F.2d 1, 4 (1st Cir.) (automatic stay normally does not foreclose suits against general partners of bankrupt partnership), *cert. dismissed,* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983); *see also supra* notes 4 & 7. MHFA has not alleged, nor does the appellate record disclose, that the general partners are insolvent.

### 2. *Chapter 11 Counsel*

#### a) *Perfection of MHFA Lien*

■ In order to obtain any meaningful relief against the debtor or the transferees of the $65,000 in other venues, of course, MHFA would have to demonstrate that it held a perfected lien or security interest in the diverted rents; otherwise, as property of the chapter 11 estate, *see* Bankruptcy Code § 541(a)(6), any unperfected lien on the rents would be subject to avoidance by the debtor in possession pursuant to its "strong arm" powers. *See id.* §§ 544(a) ("strong arm powers"), 1107(a); *see generally In re Ryan,* 851 F.2d 502, 512 (1st Cir.1988) (trustee); *In re Wabash Valley Power Ass'n,* 114 B.R. 613, 617 (S.D.Ind.1990) (debtor in possession). And once its unperfected lien was voided under Bankruptcy Code § 544(a), MHFA would have had no right to control the disposition of any portion of the $65,000 in cash collateral which remained property of the chapter 7 estate, *cf.* Bankruptcy Code § 363(a), (c)(2), (e),[9] nor any right of recourse to lien foreclosure proceedings outside the bankruptcy court against third party transferees who acquired title to the rents prior to the debtor's chapter 11 petition, *cf., e.g., In re McBee,* 714 F.2d 1316, 1326 (5th Cir.1983)

(perfected security interest in collateral continues after collateral is conveyed). Nevertheless, we agree with the district court that the MHFA security interest in these rents had been perfected before the chapter 11 petition was filed. *See In re Indian Motocycle Assocs. III Ltd. Partnership,* 174 B.R. at 356.

■ Although the prepetition perfection of a security interest in property of the estate normally is determined in reference to applicable *state law, see Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), it is now well settled that the requirements for perfecting a federal agency's security interest in property securing federally-insured loans—a subject not addressed by the NHA—is controlled by federal common law, *see United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *Butner,* 440 U.S. at 55, 99 S.Ct. at 918 (noting that state law governing perfection of security interests applies "unless some federal interest requires a different result");[10] *United States v. Landmark Park & Assocs.,* 795 F.2d 683, 685–86 (8th Cir.1986) (rents); *United States v. Floral Park Dev. Co.,* 619 F.Supp. 144, 147–48 (S.D.Ohio 1985) (rents); *United States v. Borden Fin. Corp.,* 164 B.R. 260, 264 (E.D.La.1994) (rents); *cf. Graham v. Security Sav. & Loan,* 125 F.R.D. 687, 692 (N.D.Ind.1989) (federal law controls government's rights in litigation involving federally guaranteed student loans), *aff'd sub nom. Veal v. First Am. Sav. Bank,* 914 F.2d 909 (7th Cir.1990); *cf. also Conille v. Secretary of Hous. and Urban Dev.,* 840 F.2d 105, 109 (1st Cir.1988) (applying federal common law to litigation involving scope of HUD's obligations as NHA landlord, after finding NHA left this issue for the courts).[11] Under estab-

---

**9.** Following appointment of the chapter 7 trustee, *see supra* note 3, all avoidance powers resided exclusively in the trustee, not in the debtor. *See* Bankruptcy Code § 1107(a), 11 U.S.C. § 1107(a). We assume *arguendo* that the chapter 7 trustee would attempt to avoid MHFA's lien in order that the net proceeds could be applied to claims against the estate, including any MHFA claim. For present purposes, however, we confine ourselves to an assessment of the debtor's avoidance powers at the time of the bankruptcy court ruling; that is, during the chapter 11 proceeding.

**10.** *Butner,* a Bankruptcy Act case, remains viable precedent under the Bankruptcy Code. *See Wolters Village Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),* 723 F.2d 441, 443 (5th Cir.), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984).

**11.** Like the district court, we see no policy basis for distinguishing the instant case simply because MHFA, a state agency, rather than HUD, is the party presently seeking return of the collateral. Under the NHA coinsurance regime, MHFA will

lished federal common law, HUD's security interest in post-default NHA rents normally is perfected simply by *recording* a HUD mortgage containing an assignment of rents, which places third parties on notice of the HUD lien. *See Landmark Park & Assocs.*, 795 F.2d at 685–86 (noting need for uniform federal rule in face of discordant state rules relating to perfection of security interests in rents); *In re Westwood Plaza Apartments, Ltd.*, 154 B.R. 916, 920 (Bankr.E.D.Tex.1993) (same); *cf. In re Executive House Assocs.*, 99 B.R. 266, 275–76 (Bankr.E.D.Pa.1989) (adopting *Landmark Park* "perfection" rule, but noting that other required means of perfection may be prescribed in security agreement; e.g., an express declaration of default). Of course, in our case the debtor concedes that the HUD mortgage and Regulatory Agreement were duly recorded in the appropriate registry of deeds, and that it had received a notice of default under the note before disbursing the $65,000.[12]

■ Moreover, even if it were to be assumed that federal common law does not govern the perfection of MHFA's security interest, *see supra* note 11, the same result

would obtain under Massachusetts law.[13] In *Prudential Ins. Co. of Am. v. Boston Harbor Marina Co.*, 159 B.R. 616 (D.Mass.1993), the district court held that a Massachusetts mortgagee which recorded its assignment of rents in the registry of deeds as an adjunct to its mortgage, "perfected" its lien in the rents so as to constitute the rents "cash collateral" under Bankruptcy Code § 363(a), and that there was no need for the creditor to take possession of the real property (e.g., as by foreclosure) or the rents (e.g., as by appointment of a receiver) prior to the filing of the bankruptcy petition. *Id.* at 620–22 (recognizing distinction between "perfection," which governs secured creditor's rights against third parties, and "enforcement" of liens, which controls creditor's rights against its debtor; rejecting theory that such "inchoate" or unenforced security interests are voidable under Bankruptcy Code § 544(a)); *see also* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1978), U.S.C.C.A.N. 1978, pp. 5787, 6269 ("[T]he definition [of 'lien'] ... is new and is very broad ... [and] [i]t includes 'inchoate lien[s]' ").[14] The *Prudential* court noted also that the "recordation" rule was

---

assign the note to HUD in return for payment of any unrecovered deficiency. *See* 12 U.S.C. § 1710; *see also supra* note 1. In all events, given our determination, *infra*, that MHFA's security interest was perfected under *both* federal *and* Massachusetts law, the distinction is inconsequential. *See Conille*, 840 F.2d at 110 (no need to adopt federal common law where there is "no 'significant conflict between some federal policy or interest and the use of state law' ") (citation omitted).

12. We note that the debtor's opening appellate brief did not challenge the district court ruling that the MHFA security interest in rents had been perfected. Issues presented for the first time in a reply brief normally are deemed waived. *See Clarke v. Kentucky Fried Chicken*, 57 F.3d 21, 27 (1st Cir.1995). There is no basis for relief from waiver in the instant case. Even in its reply brief, the debtor chose not to discuss the implications of *Kimbell* or *Butner* on the choice-of-law question; instead simply stating its conclusion that Massachusetts law should be applied. *See Williams v. Poulos*, 11 F.3d 271, 285 (1st Cir.1993) (issues adverted to in perfunctory manner, without adequate argumentation, deemed waived).

13. Although MHFA concedes that it did not file a financing statement, the law in most states, in-

cluding Massachusetts, classifies an assignment of rents as an interest in *real property*. Thus, parties with security interests in future rents generated from encumbered real property need not comply with the Uniform Commercial Code. *See* Mass.Gen.L.Ann. ch. 106, § 9–104(j) (excluding assignments of rent from Massachusetts U.C.C.); *see also, e.g., Commerce Bank v. Mountain View Village*, 5 F.3d 34, 39 (3d Cir.1993); *J.H. Streiker & Co. v. SeSide Co. (In re SeSide Co.)*, 152 B.R. 878, 882 (E.D.Pa.1993); *First Nat'l Bank v. United States (In re Dorsey)*, 155 B.R. 263, 267 (Bankr.D.Me.1993); *see generally* Laurence D. Cherkis, *Collier Real Estate Transactions and the Bankruptcy Code* ¶ 2.03[1], at 2–65 (1992). Instead, the mortgage and assignment of rents need only be recorded in the appropriate registry of deeds. *See* Mass.Gen.Laws Ann. ch. 183, § 4 (providing that unrecorded assignment of rents is invalid against third parties, except for persons with actual knowledge); *see also In re Cadwell's Corners Partnership*, 174 B.R. 744, 754 (Bankr.N.D.Ill.1994) (same).

14. The "possession" theory rejected in *Prudential, supra*, had essentially sounded the knell for most security interests in rents in the bankruptcy context, since the holder of a secured claim is precluded by the automatic stay from taking the very steps required to reduce rents to possession. *See, e.g.,* Bankruptcy Code § 362(a)(1), (a)(3), (a)(4).

fast becoming the majority rule among the states, thus providing further support for the "uniform" federal rule of decision adopted in *Landmark.*[15] *See Conille,* 840 F.2d at 112–13 (in fashioning appropriate federal rule of decision, court should not adopt forum state's law if it would frustrate NHA's purposes, but may consult other states' law as *a* "source" for the more apt federal common law rule) (citing *Kimbell Foods, Inc.,* 440 U.S. at 715, 99 S.Ct. at 1451 (1979)).[16] Accordingly, we conclude that the MHFA lien on rents was fully perfected prior to the chapter 11 petition, hence not voidable under Bankruptcy Code § 544(a).

### b) *Law Firm*

MHFA concedes that it can proceed against the debtor's counsel in the bankruptcy court only if the $35,000 in diverted cash collateral, intended as a prepetition "retainer," remains property of the estate, presumably as a fund held "in trust" for the debtor. MHFA cites several so-called "collateral reimbursement" decisions, *see supra* Section II.A.2, in which *debtor counsel* have been directed to surrender to the bankruptcy estate monies diverted to fund prepetition retainers. *See, e.g., In re Westwood Plaza Apartments,* 154 B.R. at 923 n. 11. MHFA itself intimated at oral argument that it may request the chapter 7 trustee to recoup the

putative trust monies from counsel, *see* Bankruptcy Code § 542, 11 U.S.C. § 542, *see also In re Sinder,* 102 B.R. 978, 982–83 (Bankr.S.D.Ohio 1989) (questioning whether parties other than trustee and debtor in possession have standing to bring § 542 action), or may interpose objection to any fee application submitted by debtor counsel, *see* Bankruptcy Code § 330, 11 U.S.C. § 330.[17]

The question whether the $35,000 "retainer" is subject to turnover cannot be resolved on the present record, since it may ultimately turn on the precise terms of any "retainer" agreement between the debtor and its counsel. *See, e.g., In re McDonald Bros. Constr., Inc.,* 114 B.R. 989, 1002 (Bankr.N.D.Ill.1990) (type of retainer is question of fact); *see also In re DLIC, Inc.,* 120 B.R. 348, 351 (Bankr. S.D.N.Y.1990) (type of retainer depends on intent of parties).[18] Certain retainers simply ensure counsel's availability to represent the client (whether or not any legal services are ever performed), or constitute prepayment for all future legal services to be performed (e.g., a flat fee). In these circumstances, counsel acquires full title to the retainer fee *on the date of payment,* regardless whether legal services are ever performed. *See In re McDonald,* 114 B.R. at 997–98, 999–1000; *see also In re Mondie Forge Co.,* 154 B.R. 232,

---

**15.** *See In re Park at Dash Point L.P.,* 121 B.R. 850, 855 (Bankr.W.D.Wash.1990), *aff'd,* 152 B.R. 300 (W.D.Wash.1991), *aff'd,* 985 F.2d 1008 (9th Cir.1993); *In re Vienna Park Properties,* 976 F.2d 106, 112–13 (2d Cir.1992) (Virginia law); *In re SeSide Co.,* 152 B.R. at 884; *In re Wiston XXIV Ltd. Partnership,* 147 B.R. 575, 580–81 (D.Kan. 1992), *appeal dismissed,* 988 F.2d 1012 (10th Cir.1993); *Midlantic Nat'l Bank v. Sourlis,* 141 B.R. 826, 832 (D.N.J.1992); *Creekstone Apartments Assocs. v. RTC (In re Creekstone Apartments Assocs.),* 165 B.R. 845, 851 (Bankr.M.D.Tenn. 1993); *SLC Ltd. V. v. Bradford Group West, Inc. (In re SLC Ltd. V),* 152 B.R. 755, 760–62 (Bankr. D.Utah 1993); *In re KNM Roswell Ltd. Partnership,* 126 B.R. 548, 554 (Bankr.N.D.Ill.1991); *In re Rancourt,* 123 B.R. 143, 147–48 (Bankr. D.N.H.1991); *In re Foxhill Place Assoc.,* 119 B.R. 708, 711 (Bankr.W.D.Mo.1990); *cf. Commerce Bank,* 5 F.3d at 39 (recordation, coupled with notice to tenants).

**16.** Though not retroactively applicable to this case, *see In re Barkley 3A Investors,* 175 B.R. 755, 758 (Bankr.D.Kan.1994), the Bankruptcy Reform Act of 1994, Pub.L. 103–394 (Oct. 22, 1994), further supports the trend. Congress added a new subsection dealing separately with the ques-

tion whether a prepetition security interest in rents extends to postpetition rents. Under prior law, the bankruptcy court was required to look to "applicable nonbankruptcy law," usually state law, *see* Bankruptcy Code § 552(b); the amendment now refers the court exclusively to the terms of the parties' "security agreement." *See id.* § 552(b)(2); *In re Barkley,* 175 B.R. at 758 (noting that, henceforth, "courts will not look to state law" to determine security interests in rents).

**17.** For present purposes, we assume *arguendo* that the chapter 7 trustee would be amenable to MHFA's request that the· trustee prosecute a § 542 turnover action against the transferees, since the commensurate reduction in MHFA's unsecured claim could increase the recoveries of other holders of unsecured claims. *See supra* note 9.

**18.** The same rationale would apply to MHFA's recovery of the $5,000 which the debtor advanced to retain bankruptcy counsel in an unrelated bankruptcy case. *See supra* note 2.

235 (Bankr.N.D.Ohio 1993). Such a retainer is precisely the same as the retainer fee paid Coopers & Lybrand; it never became part of the property of the debtor estate, and is subject to turnover only if it "exceeds the reasonable value of services rendered." *See* Bankruptcy Code § 329(b); *In re McDonald,* 114 B.R. at 995–96, 1003 n. 18; *cf. also* Bankruptcy Code § 548(a)(2), 11 U.S.C. § 548(a)(2) (avoidance of prepetition "fraudulent" transfers where "insolvent" debtor "received less than a reasonably equivalent value in exchange for transfer").[19]

██ On the other hand, a "security" retainer is held by counsel to secure payment of anticipated legal services yet to be rendered. Under the ethical rules applicable in most jurisdictions, these monies remain property of the client until applied by counsel in payment of legal services actually performed. *See In re McDonald,* 114 B.R. at 999; *see also In re Saturley,* 131 B.R. 509, 515 (Bankr.D.Me.1991); *In re Lilliston,* 127 B.R. 119, 120 (Bankr.D.Md.1991) (portion of prepetition retainer not earned prior to petition is property of estate); *In re Fitzsimmons Trucking, Inc.,* 124 B.R. 556, 558–59 (Bankr. D.Minn.1991) (same). In the instant case, the debtor's equitable "interest" in any unearned portion of the retainer, impressed with MHFA's perfected lien, would have become property of the estate on the date the chapter 11 petition was filed, *see* Bankruptcy Code § 541(a)(6), and presumably would remain subject to a turnover order in a section 542 action brought by the debtor in possession. *See In re McDonald,* 114 B.R. at 1000 n. 13 (citing *In re Gerwer,* 898 F.2d 730, 734 (9th Cir.1990)).

Of course, if the $35,000 transfer constituted a "security" retainer, counsel would be required to file a section 330 fee application to withdraw the retainer. *In re Burnside Steel Foundry Co.,* 90 B.R. 942, 945 n. 1 (Bankr.N.D.Ill.1988). MHFA could then object to debtor counsel's retention of any portion of the retainer not yet devoted to legal services which were "actual [and] necessary,"

*see* Bankruptcy Code § 330, and the bankruptcy court presumably could order debtor counsel to surrender the unearned portion as "property of the estate." *See id.* §§ 105(a); 363(e); *see also In re Westwood Plaza Apartments,* 154 B.R. at 923 n. 11.

We need not resolve the precise contours of the potential bankruptcy court remedies available to MHFA against the debtor's law firm. Rather, it was MHFA's burden to demonstrate the *unavailability of any* alternative remedy for recovering its collateral. *See supra* Section II.A.2. Even if the $35,-000 retainer is not property of the chapter 7 estate, hence not subject to chapter 7 administration, MHFA has suggested no plausible basis for concluding that it cannot trace and recover the diverted collateral in a nonbankruptcy lawsuit directed against the debtor's chapter 11 counsel (which is not protected by the automatic stay, *see* Bankruptcy Code § 362) to foreclose upon its *prior lien* on the rents. On the other hand, if the retainer remains property of the chapter 7 estate, MHFA may pursue its bankruptcy court remedies against the *nondebtor* chapter 11 counsel.

### 3. *Accounting Firm*

At oral argument, MHFA conceded that the debtor made its $25,000 prepetition payment to Coopers & Lybrand for audit services which were completed *prior to* the chapter 11 petition. *See supra* Section I.A. Consequently, the debtor retained no legal or equitable "interest" in these monies as of the date of the chapter 11 petition; and no right to, or interest in, these monies ever became property of the chapter 11 estate. *See* Bankruptcy Code § 541(a)(6). MHFA could point to no conceivable basis upon which the bankruptcy court, at this point in time, could direct Coopers & Lybrand to turn over any part of its $25,000 retainer to the chapter 7 estate. *See id.* § 542, 11 U.S.C. § 542 (third party, in possession of property of estate, may be compelled to turn it over to trustee);

---

19. Some courts have held that debtor counsel may use these two types of retainers without first filing a fee application under Bankruptcy Code § 330. *See, e.g., In re McDonald,* 114 B.R. at 1002. In all events, these retainers remain subject to scrutiny under Bankruptcy Code § 329 (debtor counsel must report all payments received for legal services). *See also* Fed. R.Bankr.P. 2017.

**1256**

*United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (even a secured party in possession of collateral constituting "property of the estate" is subject to § 542 turnover order). Moreover, MHFA has suggested no other basis upon which either the debtor in possession or the chapter 7 trustee could have avoided the prepetition transfer to Coopers & Lybrand. *See, e.g., id.* §§ 544 (avoidance of unperfected liens), 545 (avoidance of statutory liens), 547 (avoidance of preferences), 548 (avoidance of fraudulent transfers). Moreover, the limitations period for any such avoidance action would appear to have lapsed. *See id.* § 546(a)(1) (two years after order for relief); *compare also In re Ollada,* 114 B.R. 654, 655 (Bankr.E.D.Mo.1990) (§ 542 has no comparable limitations period) *with In re De Berry,* 59 B.R. 891, 898 (Bankr.E.D.N.Y.1986) (§ 542 turnover motion must be made within "reasonable time").[20]

In all events, MHFA may have a direct cause of action against Coopers & Lybrand *outside the bankruptcy court. Cf. In re Indian Motocycle Assocs. III Ltd. Partnership,* 161 B.R. at 868 ("[S]uch action … would involve only rights among nondebtors in a case having no prospects of reorganization [and] I have previously granted MHFA relief from [the automatic] stay."); *see generally In re McBee,* 714 F.2d at 1326 (noting that perfected security interest survives conveyance of collateral). The automatic stay afforded no protection to Coopers & Lybrand, *see* Bankruptcy Code § 362, and MHFA may seek to execute its perfected lien directly. At least this procedure would allay a troublesome aspect of the present case, in that Coopers & Lybrand has never received either notice or a hearing on MHFA's allegedly superior claim to the $25,000.

### III

### *CONCLUSION*

For the foregoing reasons, we decline MHFA's invitation to fashion extraordinary

judicial relief under Bankruptcy Code § 105(a), absent a showing that the judicial lawmaking it inevitably entails is either "necessary or appropriate to carry out" any provision of the Bankruptcy Code in the circumstances presented. Accordingly, we vacate the district court decision entitling MHFA to an order directing the debtor to turn over to the chapter 7 trustee the diverted MHFA cash collateral or its monetary equivalent. MHFA shall not be entitled to further relief in these chapter 7 proceedings, except on order of the bankruptcy court, after appropriate notice and hearing.

*The district court order is vacated and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion; costs to appellant.*

---

**20.** The same rationale would appear to preclude an order compelling turnover of the $5,000 payment the debtor made to the principal of its managing general partner, which might other-

wise have been voidable as a preferential transfer to an "insider." *See* Bankruptcy Code § 547; *see also supra* note 2.