**In re Murray F. ARMSTRONG.**

**William S. Meeks, Trustee, plaintiff,**

**v.**

**Samuel A. Perroni, The Perroni Law Firm, P.A., Patrick R. James and Patrick R. James, P.A., defendants.**

**Bankruptcy No. 96–50087 S. Adversary No. 98–5005.**

United States Bankruptcy Court, E.D. Arkansas, Pine Bluff Division.

Jan. 29, 1999.

---

1. Of course, the trustee may appeal the denial of his request for prejudgment interest.

Thomas Streetman, Crossett, AR, for plaintiff.

David Grace, Little Rock, AR, for defendant.

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon motions for summary judgment filed by the parties. The debtor in this case, Murray Armstrong, is an attorney who organized Ponzi schemes[1] and embezzled massive amounts of funds from his clients to support his snowballing Ponzi schemes and gambling debts. As is the nature of Ponzi schemes, his financial difficulties were exacerbated rather than remedied. In an effort to support the snowballing debts arising from his schemes, he borrowed money, and in 1994, began gambling in hopes of winning enough money to fund the collapsing Ponzi schemes. Check kiting became a means of supporting his new way of life. In the final days of his financial collapse Armstrong defrauded elderly clients of their life savings. When one of his schemes was finally exposed, they all collapsed. On January 30, 1996, an involuntary bankruptcy petition was filed and an order for relief was entered on March 14, 1996. His bankruptcy discharge has been denied and he is now incarcerated in a state penitentiary for his crimes.

In pursuance of his duties under the Bankruptcy Code, the trustee initiated numerous actions to recover money and property.[2] In this action, the trustee seeks to recover funds paid to attorneys representing Armstrong in various criminal investigations and prosecutions. The trustee's causes of action are based upon theories that the funds are property of the estate, 11 U.S.C. § 542, the transfers constitute fraudulent transfers or preferences, 11 U.S.C. § 548(a)(2), 547(b), or are postpetition transfers, 11 U.S.C. § 549.

In early 1995, Armstrong was contacted by the Internal Revenue Service and Department of Justice regarding an investigation under the Currency Transaction Reporting Act. On February 15, 1995, Armstrong hired Samuel Perroni[3] to represent him with respect to this investigation. The parties entered into a written agreement pursuant to which Armstrong paid Perroni $10,000 on February 16, 1995, and another $10,000 on February 23, 1995, for a total of $20,000.[4] Perroni kept no records of the time he spent representing Armstrong with regard to this investigation.

Almost a year later, on January 17, 1996, when his nefarious schemes collapsed and were exposed, Armstrong again contacted Perroni, again requesting representation regarding criminal investigations. Although Armstrong and Perroni did not enter into a written agreement, they agreed that Armstrong would remit $30,000 to Perroni. The nature of the retainer agreement and the scope of representation is disputed.[5] On

1. Ponzi schemes are schemes in which returns to investors are financed through funds from new investors rather than through the success of the underlying business venture. *See generally In re Hedged–Investments Assoc.*, 48 F.3d 470 (10th Cir.1995).

2. A total of fifty-seven adversary proceedings have been filed within the context of this bankruptcy case, forty of which were initiated by the trustee. The proceedings to recover money or property include suits against banks with whom Armstrong did business, his Ponzi scheme investors, and gambling casinos.

3. For purposes of this opinion, the Court uses the term Perroni or the firm interchangeably, referring to Samuel Perroni as well as the law firm.

However, the trustee's motion is granted only as to the defendant Perroni Law Firm, P.A.

4. This fee is not the subject of the motions for summary judgment. Accordingly, reference to recovery of the fee in this opinion refers to Armstrong's second engagement of Perroni, for which a $30,000 fee was paid.

5. For example, Perroni disputes that he was hired to represent Armstrong in any of the state court matters. Rather, he asserts that he was hired only to represent Armstrong to enter into a plea agreement with federal authorities.

January 17, 1996, Armstrong's father gave $15,000 to Perroni. On January 23, 1996, Armstrong endorsed an insurance check in the amount of $42,641 to the Perroni law firm, which check was deposited into the Perroni Law Firm attorney trust account. That same day, a check in the amount of $15,000 was issued from the trust account to the Perroni law firm money market account. Five Thousand Dollars of these funds were paid to Patrick James, an attorney in Perroni's office. Thus, on January 24, 1996, Perroni had in his law firm account the sum of $30,000 pursuant to some form of retainer agreement with Armstrong.

The next day, on January 24, 1996, a check in the amount of $15,000 was issued from the trust account to Armstrong's father to reimburse him for the initial deposit to Perroni. The rest of the funds, $12,641, remained in the trust account. The statements of account reveal that there were no further withdrawals until February 15, 1996, a date during the gap period,[6] in the amount of $136.75. On March 14, 1996, when the order for relief was entered; $12,504.25 was on deposit in the trust account. On March 15, 1996, an additional $302.08 for attorney time and a telephone charge, all accruing prior to March 14, 1996, were charged against the trust account.

### I. Turnover of Property of the Estate, 11 U.S.C. § 542

The trustee asserts that, upon the filing of the involuntary petition on January 30, 1996, all of the funds received by the Perroni law firm became property of the estate and are subject to turnover pursuant to section 542 of the Bankruptcy Code.[7] Perroni asserts that the funds received in January 1996 were in payment of a flat fee, earned and vested in him upon receipt such that the funds are not property of the estate. This argument is based upon Perroni's interpretation of the nature of the agreement entered into with Armstrong.

■ Case authority recognizes three types of retainer agreements, the classic, se-

curity, and advance payment retainers. A classic retainer is paid to secure an attorney's availability and the attorney is entitled to the funds regardless of the services performed. *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 998 (Bankr.N.D.Ill.1990). Monies paid to an attorney pursuant to a classic retainer agreement do not become property of the estate. *Id.* at 998–99. Similarly, the advance payment retainer, in which ownership of the retainer is intended to pass to the attorney at the time of the payment in exchange for the commitment to provide legal services, does not become property of the estate *if* it is paid prepetition. *Id.* at 1000. The security retainer, in contrast, permits the attorney to hold a payment from the client to secure payment of fees for future services. Under this agreement, the monies are not a present payment for future services, but remain property of the debtor until the funds are applied to charges for services actually rendered. *Id.* at 999. Thus, funds paid pursuant to a security retainer remain property of the estate. *Id.* at 999–1000. These funds can only be applied by counsel upon compliance with the entire Bankruptcy Code fee application process, including court approval. *Id.* at 1000.

■ The parties dispute the proper characterization of the fee paid to Perroni prepetition such that there is a question of fact as to whether the $30,000 paid to Perroni prior to the filing of the bankruptcy case is property of the estate. *Cf. Indian Motocycle Assoc. III Ltd. Partnership v. Massachusetts Housing Fin. Agency*, 66 F.3d 1246 (1st Cir. 1995) (whether retainer was subject to turnover turned on the parties' intent and the precise terms of the agreement between the debtor and counsel). Accordingly, summary judgment with respect to the $30,000 retainer will be denied.

■ There is no genuine issue of material fact, however, with regard to the funds remaining in the Perroni law firm trust account in excess of the agreed $30,000 after the bankruptcy petition was filed and the

---

6. The gap period refers to the period between the filing of the involuntary petition and entry of the order for relief in the case.

7. The trustee does not seek to recover the $15,-000 paid to reimburse Armstrong's father.

order for relief entered. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). While federal bankruptcy law determines the effect of legal or equitable interests in property, *N.S. Garrott & Sons v. Union Planters National Bank (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir.1985), the Court looks to state law to determine the nature and extent of the interest, *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re N.S. Garrott & Sons*, 772 F.2d at 466.

Section 542(a), the basis for the trustee's first cause of action, requires a party holding property of the estate to deliver it to the trustee. On January 30, 1996, the Perroni law firm held $12,641 of Armstrong's money. The fact that the law firm subsequently spent these funds does not negate the fact that, on the date of the petition, these funds were property of the estate and, thus, subject to turnover. *See Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750, 756 (8th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1678, 140 L.Ed.2d 815 (1998) ("The debtor's equitable interest in the unearned portion of the retainer becomes property of the estate upon the filing of the bankruptcy petition.... To withdraw the retainer, counsel is required to file a fee application with the bankruptcy court ... and the court could require the debtor's counsel to surrender the unearned portion as "property of the estate" pursuant to § 542."); *Indian Motocycle Assoc. III Ltd. Partnership v. Massachusetts Housing Fin. Agency*, 66 F.3d 1246, 1255 (1st Cir. 1995). The defense of good faith that the property was transferred to another applies only if the party has no actual notice or actual knowledge of the bankruptcy case. *See* 11 U.S.C. § 542(c).

Perroni's only response to the trustee's request for turnover with respect to the $12,-641 is that the funds were held in order to "defray expenses incidental to the Law Firm's efforts to successfully negotiate a federal plea" and that the firm was not required

to obtain authorization from the bankruptcy court to be reimbursed for their expenses. *But see Indian Motocycle Assoc. III Ltd. Partnership v. Massachusetts Housing Fin. Agency*, 66 F.3d 1246, 1255 (1st Cir.1995) ("Of course, if the $35,000 transfer constituted a 'security' retainer, counsel would be required to file a section 330 fee application to withdraw the retainer."). Even assuming that section 329 governing the debtor's transactions with attorneys does not apply to Perroni, *but see Wootton v. Ravkind (In re Dixon)*, 143 B.R. 671 (Bankr.N.D.Tex.1992) (prepetition payment to criminal defense attorneys subject to section 329 scrutiny),[8] Perroni was not entitled to appropriate property of the estate by applying those funds to charges. If the retainer is not property of the estate, the attorneys may apply the funds to their fees. However, a prepetition retainer which remains property of the estate may not be applied absent approval by the bankruptcy court. *In re Sheridan*, 215 B.R. 144, 145 (Bankr.N.D.Ill.1996). Thus, inasmuch as the $12,641 held by Perroni on the date the bankruptcy case was filed constituted property of the estate, the funds are subject to turnover to the trustee.

II. *Prejudgment Interest*

In order for the trustee to recover prejudgment interest, the application of the elements of his statutory action must be ascertainable. The defendant must also lack a worthy defense indicating that the trustee's recovery was probable. If these circumstances exist, the trustee is entitled to prejudgment interest on his recovery in the section 542 turnover action because the trustee (estate) has been deprived of the use of the funds. *See generally Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 833–36 (2d Cir.1992), *cert. denied*, 506 U.S. 946, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992) (discussion of history and application of awards of prejudgment interest). Prejudgment interest may be awarded to compensate a party for the denial of the use of funds, *West Virginia v. United States*, 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987), or where the defendant could have ascer-

---

**8.** In the alternative, the court in *Dixon* noted that if the bankruptcy court lacks jurisdiction to review the fees under section 329, the funds are vulnerable to disgorgement under section 548(a)(2) (citing *In re Habegger*, 139 F. 623 (8th Cir.1905)).

tained the amount of the potential recovery without a judicial determination, *i.e.,* if the claim was liquidated, *Bank of Mulberry v. Fireman's Fund Ins. Co.,* 720 F.2d 501, 503 (8th Cir.1983); *United States v. Dimarco Corp.,* 985 F.2d 954, 959 (8th Cir.1993); *Jacoway v. Anderson (In re Ozark Restaurant Equip. Co.),* 96 B.R. 187, 192 (Bankr. W.D.Ark.1988). With regard to the $12,641, Perroni has not asserted a worthy or credible defense. His arguments, to the extent he even argues that the funds are not property of the estate, are without merit such that prejudgment interest on the $12,641 is appropriate.

### III.  *Conclusion*

Also pending before the court are the parties' contentions regarding the trustee's preference, fraudulent transfers, and postpetition transfer actions. The remaining causes of action are viable, *see generally In re Dixon,* 143 B.R. at 680–681, and the court deems it appropriate that they proceed to trial.

**ORDERED AS FOLLOWS:**

1. The plaintiff's Motion for Summary Judgment filed on December 22, 1998, is granted in part as to the Perroni Law Firm and denied as to the remainder of the causes and defendants. At such time as entry of judgment is appropriate, *see* Fed.R.Bankr.P. 7054(a); Fed.R.Civ.P. 54(b), the trustee will be entitled to judgment in his favor against The Perroni Law Firm, P.A. in the amount of $12,641.00 plus prejudgment interest accruing from and after January 23, 1998.

2. The defendant's Motion for Summary Judgment, filed on December 22, 1998, is Denied.

**IT IS SO ORDERED.**