**In re CK LIQUIDATION CORPORATION (f/k/a/ Cadkey Corporation), Debtor.**

**No. 03–44906–HJB.**

United States Bankruptcy Court, D. Massachusetts.

Feb. 28, 2005.

James M. Wilton, Ropes & Gray LLP, Boston, MA, for debtor.

Richard King, Office of the U.S. Trustee, Worcester, MA, United States Trustee.

John A. Burdick, Worcester, MA, Chapter 7 Trustee.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the "United States Trustee's Motion to Reconsider Order Allowing Final Application for Compensation and Reimbursement of Expenses of Ropes & Gray LLP as Counsel to the Debtor" (the "Motion for Reconsideration"). The dispute between Ropes and Gray LLP ("R & G") and the United States trustee for Region 1 (the "UST") raises significant issues surrounding the responsibilities of counsel for a debtor in a case converted from Chapter 11 to Chapter 7 and how that counsel may be compensated for post-conversion services. For the reasons set forth below, the Motion for Reconsideration is denied.

### I. *Facts*

The underlying facts of the case are not complex, uncommon or disputed. Cadkey Corporation[1] (the "Debtor"), a software company, filed for Chapter 11 bankruptcy protection in this Court on August 22, 2003. The Debtor's goal was to save its business by selling its operating assets as a going concern. The Debtor was represented by R & G, which, as of the petition date, held a retainer in the amount of $50,174.60.[2] R & G's employment as Debtor's counsel was approved by the Court on September 9, 2003. With the competent assistance of R & G, the Debtor was able to successfully complete a court-approved sale of substantially all of its assets in December of 2003. Thereafter, on the Debtor's motion, the case was converted to Chapter 7 on March 4, 2004. Attorney John A. Burdick was appointed as the Chapter 7 trustee. After conversion, R & G filed the list of post-petition

---

1. After the sale of substantially all of its assets, and pursuant to the terms of the asset purchase agreement, the Debtor sought, and was granted, an amendment of the case caption to "CK Liquidation Corporation."

2. Pursuant to this Court's bidding procedures order, R & G later received an additional retainer in the amount of $200,000.00. But R & G drew down the additional retainer in connection with the Court's allowance of interim compensation, leaving a current balance of approximately $48,000.00.

creditors required under Federal Rule of Bankruptcy Procedure 1019, attended the required post-conversion meeting under 11 U.S.C. § 341, and generally assisted the trustee with such transition as the trustee required to familiarize himself with the case.

In December of 2003, during the pendency of the Chapter 11 case, R & G filed its first motion for interim compensation, seeking, for the period of August 22, 2003 to November 30, 2003, interim compensation of $391,748.50 and expense reimbursement of $20,56.85. On December 29, 2003, the Court allowed R & G interim compensation of $383,689.00 and expense reimbursement of $19,816.35 (the "First Allowance").

R & G filed its final fee application on June 23, 2004 (the "R & G Final Fee Application"). R & G sought final allowance of $455,331.59 in pre-conversion fees and expenses, inclusive of the First Allowance, and payment of the balance of $59,636.24 for the period from December 1, 2003 to March 4, 2004. Further, the application sought $7,820.00 in post-conversion fees. As listed in the R & G Final Fee Application, the post-conversion fees accrued as follows:

| | |
|---|---|
| Preparation of Post–Conversion Creditor Schedules | $ 708.00 |
| Attendance at a Post–Conversion Court Hearing on a Pre–Conversion Motion for Authorization to Effect a Name Change of the Debtor from Cadkey Corporation to CK Liquidation Corporation as to which R & G was the attorney of record | 1,686,50 |
| Attendance with Representative of Debtor at § 341 Meeting of Creditors | 1,386.50 |
| Consultation with Chapter 7 Trustee Concerning Transition | 472.00 |
| Preparation of R & G Final Fee Application | 3,567.00 |
| Total: | $7,820.00 |

At the hearing on the R & G Final Fee Application on September 7, 2004, counsel for the UST orally objected to allowance of the post-conversion fees, arguing that the then recently decided United States Supreme Court case of *Lamie v. United States Trustee* precludes a debtor's counsel from being compensated for Chapter 7 services unless the debtor's counsel has been employed by the Chapter 7 trustee. At the conclusion of the parties' arguments, this Court allowed the R & G Final Fee Application in the full amount requested. The UST then filed her Motion for Reconsideration, which is now before the Court.

## II. *Positions of the Parties*

Relying on *Lamie v. United States Trustee,* the UST argues again that R & G may not be paid for post-conversion work because R & G was not employed by the Chapter 7 trustee. Further, believing that, in its September 7, 2004 order, the Court relied, in part, on a ruling by Judge Walrath of the United States Bankruptcy Court for the District of Delaware in the case of *In re Channel Master Holdings, Inc.,* 309 B.R. 855, 859 n. 3 (Bankr.D.Del. 2004), the UST advises the Court that the bankruptcy court in the District of Delaware has since reversed its stance in the unpublished case of *In re Paradigm Advanced Technologies, Inc.,* Chapter 7 case no. 03–13424(MFW) (Order of Court Denying First Interim and Final Application of Saul Ewing LLP as Counsel for Paradigm Advanced Technologies, Inc. for Post–Petition Fees and Expenses). The UST requests that the Court vacate its September 7, 2004 order and sustain the UST's objection to allowance of payment for R & G's post-conversion services.

R & G disputes the UST's interpretation that *Lamie* excludes any use of retainers in Chapter 11 cases to ensure payment of post-conversion fees and expenses. While R & G concedes that a portion of its retainer is property of the estate, it con-

tends that it is entitled to apply the retainer to its outstanding fees for services in the Chapter 7 case. R & G's argument is essentially based in equity. It says that it was statutorily required to perform all of its post-conversion services by the Bankruptcy Code, Bankruptcy Rules, Massachusetts Local Bankruptcy Rules or ethical canons—and should not have been compelled to render those services without compensation. In the alternative, R & G argues that its post-conversion services should be recharacterized as pre-conversion Chapter 11 expenses—for which R & G's employment was authorized.

Both parties agree that R & G had continuing post-conversion duties. In fact, at the hearing on the Motion for Reconsideration, counsel for the UST acknowledged that, had R & G refused to provide these post-conversion services, the UST may well have raised an objection to allowance of R & G's pre-conversion compensation.

III. *Discussion*

A. *The Post–Conversion Duties of the former Chapter 11 Debtor and the Debtor's Counsel*

The duties of a debtor whose Chapter 11 case has been converted to Chapter 7 are well understood. Initially, the debtor bears the same responsibilities as any Chapter 7 debtor. Section 521 of the Bankruptcy Code provides:

The debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs;

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;

(3) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

(4) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title, and

(5) appear at the hearing required under section 524(d) of this title.

11 U.S.C. § 521 (2004).

When a debtor has filed first in Chapter 11 and the case has been converted to

Chapter 7, the debtor assumes additional responsibilities. The debtor must turn over to the Chapter 7 trustee all records and estate property under the debtor's control prior to conversion. Fed. R. Bankr.P. 1019(4). The debtor must also update the schedules to list any unpaid post-petition pre-conversion debt and file a final accounting and report. Fed. R. Bankr.P. 1019(5)(A). The debtor must appear at a new meeting under § 341 to be examined by the trustee. 11 U.S.C. § 348(a); 11 U.S.C. § 341(a). And, last but not least, pursuant to § 521(3), the debtor must cooperate with whatever transition is necessitated by the conversion. 11 U.S.C. § 521(3) (2004).

All of the foregoing duties of a debtor are critical to the success of the Chapter 7 trustee because of the inherent difficulties in the administration of any Chapter 7 case—all the more so for one that already has a post-petition history. As this Court has previously commented:

> In Chapter 7 cases and in Chapter 11 cases where the debtor has been relieved of possession, trustees take on enormous responsibilities. Yet, trustees are sent into the fray without the most basic of protections, that of sufficient historical knowledge of the debtor's affairs. The requirement of disinterestedness usually denies the trustee meaningful advance information with respect to the critical issues in the case.

> If the debtor is a business, the trustee will usually have little (or no) prior understanding of the industry in which the business operated. If further operation of the debtor's business is required, the trustee will be expected to make decisions presumably sounder than those of the principals who failed in that enterprise. If liquidation is the direction taken, the trustee will be expected to conduct that liquidation in a manner consistent with the industry in which the business operated. And the trustee is to accomplish these tasks without the unconditional confidence or assistance of any other actor in the case, except for that of her or his own agents. The court and the United States Trustee must remain disinterested. The debtor (or its principals, if the debtor is a corporation) certainly has no affection for the trustee. Secured creditors are the trustee's statutory adversaries. And unsecured creditors demand of the trustee the due performance of the trustee's duties, amid their underlying concern that the trustee may object to their claims demand recovery of their prepetition gains as preferences or fraudulent transfers, and/or question their prepetition business activities with the debtor. Further, they often resent the dilution to their ultimate recovery that is caused by a trustee's involvement and resulting claim for compensation.

*DiStefano v. Stern, et al. (In re J.F.D Enterprises, Inc.)*, 223 B.R. 610, 627–28 (Bankr.D.Mass.1998).

■ A debtor who has filed a Chapter 11 case requires legal assistance in order to meet its obligations in an ensuing Chapter 7 case. Fortunately, the attorney who represented the debtor in Chapter 11 is almost always available for that purpose. Representation of a debtor who files under Chapter 11 is not restricted to assisting only the debtor in possession. The debtor who loses possession in the Chapter 11 case or whose case is converted to Chapter 7 is the same entity, albeit with different rights and responsibilities, who hired the attorney at the outset, and a loss of possession or case conversion is an unfortunate, but reasonably foreseeable outcome of the filing of any Chapter 11 case. An attorney who takes on the representation

of a Chapter 11 debtor may not, even with the pre-petition agreement of the debtor, terminate his or her services to the debtor after conversion of the case to Chapter 7.[3] But what remains is the difficult question of how, if at all, the attorney for a debtor in a converted Chapter 11 case can be compensated for the attorney's required post-conversion services.

## B. *Post–Conversion Compensation Under the Bankruptcy Code*

A discussion of *Lamie* is now in order, and the facts and travel of that case illuminate the present inquiry. Attorney Lamie served as Chapter 11 debtor's counsel to Equipment Services, Inc. in a Chapter 11 case pending in the United States Bankruptcy Court for the Western District of Virginia. *Lamie v. United States Trustee*, 540 U.S. 526, 531, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). The case was subsequently converted to one under Chapter 7, and Attorney Lamie continued to render required services. *Id.* at 532, 124 S.Ct. 1023. Subsequently, Attorney Lamie filed his fee application, which included a request for payment for those post-conversion services. *Id.* Ruling that an appropriate reading of 11 U.S.C. § 330(a)(1)[4] precluded the payment of post-conversion fees exceeding the balance of Attorney Lamie's remaining pre-petition retainer, the bankruptcy court allowed Attorney Lamie's post-conversion fees up to the amount of that retainer, and sustained an objection by the United States trustee for Region 4 to payment of the balance from unencumbered estate funds. *In re Equipment Services, Inc.*, 253 B.R. 724 (Bankr.W.D.Va.2000). In so ruling, the bankruptcy court reasoned that the balance of the retainer held by Attorney Lamie was not property of the estate and that the trustee held only a reversionary interest therein after all necessary post-conversion fees had been paid. *Id.* at 730–733.

Both the debtor and the United States trustee appealed to United States District Court for the Western District of Virginia.

---

**3.** Courts have wrestled with the question of how to treat a post-conversion claim by debtor's counsel in response to criticism that the debtor's attorney, in overexuberance, rendered services which impinged on the role of the estate representative. In the case of *In re Pine Valley Machine, Inc.*, decided well before *Lamie*, this Court ruled that post-conversion services by debtor's counsel ought to be paid by the estate only if such services were rendered in good faith, limited to those associated with transition, of benefit to the estate, not duplicative of services rendered by the trustee and not obstructive to estate administration. 172 B.R. 481 (Bankr.D.Mass.1994); *see also, In re Hasset, Ltd.*, 283 B.R. 376 (Bankr. E.D.N.Y.2002). While the *Pine Valley* holding has certainly lost much of its utility by virtue of the holding in *Lamie*, it retains its relevance to the extent of the distinctions between *Lamie* and the instant case as described below.

**4.** 11 U.S.C. § 330(a)(1) currently provides:
(1) After notice to the parties in interest and the United States Trustee and a hear-

ing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
(B) reimbursement for actual, necessary expenses.
Prior to the 1994 amendments, § 330(a) had read, *inter alia:*
(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, *or to the debtor's attorney— Lamie* at 1027–28, 124 S.Ct. 1023 (quoting 11 U.S.C. § 330(a), *amended by* 11 U.S.C. § 330(a) (1994)) (emphasis added).

That court affirmed, adopting *in toto* the reasoning of the bankruptcy court. *In re Equipment Services, Inc.*, 260 B.R. 273 (W.D.Va.2001). Both sides appealed further to the Fourth Circuit Court of Appeals. But the result there was different. Although the Fourth Circuit agreed with the prior courts' interpretation of § 330(a)(1), the Fourth Circuit held that post-conversion fees could not be paid even from the retainer. *In re Equipment Services, Inc.*, 290 F.3d 739 (4th Cir.2002). In its analysis, the Fourth Circuit reasoned that security retainers, such as that held by Attorney Lamie, became property of the estate at the time of conversion, and, because Attorney Lamie was not reemployed by the Chapter 7 trustee, he could not recover compensation from estate property. *Id.* at 746–47.[5]

The Fourth Circuit decision contributed to a significant split among the Circuits with respect to whether the omission of debtors' attorneys from those who could be compensated under § 330(a)(1) was intentional or inadvertent when the section was amended in 1994, and, if inadvertent, how the courts should respond in the absence of congressional correction since 1994. The problem was further exacerbated by grammatical clumsiness in the language of the section, supporting the view of those courts who chose to supply a judicial correction. The Fifth and Eleventh Circuits (and now the Fourth) held that § 330(a)(1)

should be interpreted as written; the Second, Third, and Ninth Circuits held the opposite. *See In re Pro–Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir.1998); *In re American Steel Product, Inc.*, 197 F.3d 1354 (11th Cir.1999); *In re Ames Dept. Stores, Inc.*, 76 F.3d 66 (2nd Cir.1996); *In re Top Grade Sausage, Inc.*, 227 F.3d 123 (3rd Cir.2000); *In re Century Cleaning Services, Inc.*, 195 F.3d 1053 (9th Cir. 1999). The United States Supreme Court granted certiorari to resolve the Circuit split, and ultimately affirmed the Fourth Circuit decision by holding that the best interpretation of the inartfully drawn language of § 330(a)(1) precluded payment of compensation for a debtor's attorney unless employed pursuant to 11 U.S.C. § 327 by the Chapter 7 trustee. *Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).

Accordingly, absent more, R & G's arguments in support of payment for post-conversion services must fail. But there is more. In *Lamie*, the Supreme Court ruled on the proper interpretation of § 330(a)(1), but *not* on the issue which separated the Fourth Circuit from the courts below—the availability of the retainer for payment—and for good reason. The issue was never presented to the Supreme Court. Neither the petitioner nor the respondent had an interest in arguing the point. The United States trustee for Region 4 stood in defense of the Fourth

---

**5.** In determining that Attorney Lamie held a security retainer, the Fourth Circuit relied heavily on the First Circuit case of *Indian Motorcycle Associates III Limited Partnership v. Massachusetts Housing Finance Agency*, 66 F.3d 1246 (1st Cir.1995), which elucidated the differences in the kinds of retainers taken by attorneys. The First Circuit explained that there are three categories of retainers that attorneys typically receive. The first is an availability retainer, which (appropriately enough) ensures the attorney's availability. *Id.* The second is a flat fee retainer, which

constitutes pre-payment for all future legal services which are ever performed. *Id.* The third is a security retainer, which secures payment of anticipated legal services yet to be rendered. *Id.* While availability and flat fee retainers become property of the attorney at the time the retainer is given, a security retainer remains property of the debtor (or the estate) until properly applied by the attorney for services actually performed. There is no question but that, in this case, R & G held a security retainer.

Circuit opinion and limited its arguments to those made by the petitioner, Attorney Lamie. And Attorney Lamie was not interested in "half a loaf." He wanted vindication for his interpretation of § 330(a)(1). Accordingly, he never separately raised the retainer issue which would have limited his recovery to the balance of the retainer. As Attorney Lamie observed in his brief to the Supreme Court:

> Petitioner did not challenge the court of appeals' state-law determination that the particular retainer in this case was property of the estate, rather than of petitioner...

(Petitioner's Brief, 2003 WL 21295241). Accordingly, this Court is free to reexamine the question of whether an attorney rendering required services on behalf of a converted Chapter 11 debtor may be paid from the balance, if any, of a pre-petition retainer.[6]

### C. The Security Retainer

 The nub of the Fourth Circuit's disagreement with the bankruptcy court and the district court in *Lamie* was its view that the retainer could not serve as a source of compensation for debtor's counsel in a converted Chapter 11 case because it was "property of the estate." *In re Equipment Services, Inc.*, 290 F.3d at 746–47. The court also found support in the law of the State of Virginia, there applicable, to the effect that attorneys must hold client funds in trust. *Id.* at 746. The Fourth Circuit employed this reasoning to conclude that security retainers must be turned over to the Chapter 7 trustee, notwithstanding the unpaid services which counsel to the converted Chapter 11 debtor rendered in the Chapter 7 case. *Id.* at 747. Here, this Court respectfully parts company. Whether an attorney's retainer is property of the estate (a view with which this Court does not quarrel) is besides the point. Property may constitute property of the estate even if it is encumbered by a lien. *See United States v. Whiting Pools, Inc. (In re Whiting Pools, Inc.)*, 462 U.S. 198, 203–204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (holding that "[a]lthough Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with 'adequate protection' for their interests.")

 Security retainers are just that— security. When an attorney takes a retainer from a client, an attorney obtains a valid, perfected security interest in those funds to the extent of the validity of the underlying claim. The attachment and

---

**6.** It is perhaps appropriate at this point to address and quickly dispose of the UST's argument that this Court should reconsider its September 7, 2004 order because it may have relied on the *Channel Master Holdings* decision made by Judge Walrath in the District of Delaware, and, according to the UST, Judge Walrath has since reversed her stance. The UST is wrong on both counts. First, this Court did not rely on the *Channel Master Holdings* decision. That decision was offered by R & G for this Court's consideration. This Court was pleased to hear about a like-minded view held by another court, but issued its decision without any reliance on *Channel Master Holdings* which addressed the retainer question only in dicta and in a footnote. Second, *Paradigm Advanced Technologies* does not, in any event, represent a reversal of the views advanced by *Channel Master Holdings*. The cases are inapposite. The *Channel Master Holdings* fact pattern mirrored the one now before this Court. It related to a fee request by counsel to a converted Chapter 11 debtor. *Paradigm Advanced Technologies* was not a case converted from Chapter 11. That debtor originally filed under Chapter 7 of the Bankruptcy Code. Both *Channel Master Holdings* and *Paradigm Advanced Technologies* are consistent with one another and, as is explained below, with the *Lamie* decision.

perfection of security interests in Massachusetts are governed by ch. 106, Article 9 of the General Laws of the Commonwealth. In order for a security interest to attach, value must be given, the debtor must have rights in the collateral (or the power to transfer those rights) and at least one of a number of other conditions must be met as set forth in § 9–203(b), one of which is an authenticated security agreement. M.G.L. ch. 106, § 9–203(b). Each of those requirements has been met here: value has given by virtue of the legal services which R & G provided to the Debtor as a debtor in possession and was compelled to provide in the Chapter 7 case which followed (see Part III(A), *infra*); the Debtor had rights in the pre-petition funds transferred to R & G as a retainer, as well as the right to transfer those funds; and the written retainer agreement between the parties, evidencing the transfer of the moneys to the attorney as a retainer, served as a sufficient security agreement. Perfection of R & G's security interest was satisfied by possession of the funds, notwithstanding the requirement to hold the monies in trust. M.G.L. ch. 106, § 9–313(a).[7]

State law generally creates and defines property interests, not the Bankruptcy Code. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Because a lien is a property interest, it is state law that creates and defines any lien that R & G holds. *See In re Pennsylvania Central Brewing Co.*, 135 F.2d 60 (3rd Cir.1943). And the Supreme Court has unconditionally held that, absent a statutory provision to the contrary (e.g., § 722 or § 522(f)), liens are unaffected by travel through a Chapter 7 case. *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) (holding that "[o]rdinarily, liens and other secured interests survive bankruptcy").

Characterization of a security retainer as a lien on the funds is completely consistent with First Circuit precedent. In *Indian Motorcycle Associates III Limited Partnership v. Massachusetts Housing Finance Agency*, the First Circuit explicitly defined the "security retainer" as one "held by counsel to secure payment of anticipated services yet to be rendered."

---

7. In this connection, the Court notes, but does not rely upon, two forms of attorney statutory liens discussed in the Massachusetts statutes or case law. Massachusetts General Law 221 § 50 provides:

> From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses *upon his client's cause of action, counterclaim or claim*, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom. Upon the request of the client or of the attorney, the court in which the proceeding is pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien; provided, that the provisions of this sentence shall not apply to any case where the method of the determination of attorneys' fees is otherwise expressly provided by statute.

(emphasis added). This lien, commonly referred to as a *charging lien*, is not here applicable because, under the statute, it arises from a client's claim against a third party. Bankruptcy cases are not principally about the debtor's claims against others, but about the claims of others against the debtor. *See In re Engage*, 315 B.R. 208, 215 (Bankr. D.Mass.2004). The other form of attorney's lien is the *retaining lien*, a lien on property of a client in the attorney's possession. The retaining lien has not, however, yet been recognized by the Supreme Judicial Court. *Torphy v. Reder*, 357 Mass. 153, 156–57, 257 N.E.2d 435 (1970).

66 F.3d 1246, 1255 (1st Cir.1995). It is inconceivable that the First Circuit did so without appreciating the meaning of the term "security." *See also In re Martin*, 817 F.2d 175, 181 (1st Cir.1987) (leaving to the discretion of bankruptcy courts whether in the context of a particular case it is even appropriate for an attorney to take a mortgage as collateral for a retainer).

In *Lamie*, the Supreme Court declared that its reading of § 330(a)(1) precluded an award of compensation to debtor's counsel in a Chapter 7 case unless that counsel was employed by the Chapter 7 trustee. But never did the Court suggest or intimate that compensation for necessary transition services could not be made from the balance of a pre-petition retainer. Indeed, the Supreme Court suggested the opposite. In the course of its reasoning, the Court deemed it appropriate to respond to the suggestion that its reading of § 330(a)(1) would create an impractical burden upon estate administration and would be unfair to debtors' counsel. The Court responded:

> It appears to be routine for debtors to pay reasonable fees for legal services *before filing for bankruptcy* to ensure compliance with statutory requirements. . . . So our interpretation accords with common practice. Section 330(a)(1) does not prevent a debtor from engaging counsel *before a chapter 7 conversion* and paying reasonable compensation in advance to ensure that the filing is in order.

*Lamie*, 540 U.S. at 537–38, 124 S.Ct. 1023 (emphasis supplied).

The foregoing comment is quite telling. With the words "before filing for bankruptcy," the Court was obviously referring to a pre-petition payment. And with the words "before a Chapter 7 conversion," the Court was obviously referring to a case originally filed under Chapter 11. Accordingly, the Court could only have been referring to a pre-petition payment made for legal services to be rendered in a Chapter 11 case and in the form of either a flat fee or security retainer. But flat fee payments to attorneys handling Chapter 11 cases are impractical and inappropriate because of the concentration of services associated with those kinds of cases and the unlikelihood that any court would approve a substantial fee subject only to a § 329 inquiry.[8] So when the Court noted that its interpretation "accord[ed] with common practice," the only remaining possibility is that it was suggesting that counsel to a Chapter 11 debtor was permitted to take a sufficient security retainer, paid pre-petition, in a case originally filed under Chapter 11 to satisfy its services in the event the case converted to Chapter 7—just the case now before this Court. That arrangement, the Supreme Court said, was not in

---

8. 11 U.S.C. § 329 provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
(1) the estate, if the property transferred—
(A) would have been property of the estate; or
(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
(2) the entity that made such payment.

conflict with its interpretation of § 330(a)(1). *Id.*

## V. *Conclusion*

For all the foregoing reasons, the Court finds that, while *Lamie* precludes compensation from unencumbered assets for post-conversion services by a debtor's counsel who has not been re-employed by the Chapter 7 trustee, Massachusetts state law provides a lien for such counsel to the extent of an undisbursed pre-petition retainer and subject to the validity of the underlying claim. The validity of the claim is subject to review by the Court using those determinants commonly employed to review attorney compensation, *see In re LaFrance*, 311 B.R. 1, 19–20 (Bankr.D.Mass.2004)(collecting cases), and is further subject to the limitations set forth in the *Pine Valley* case.

Here, R & G's remaining pre-petition retainer exceeded its requested post-conversion claim of $7,820.00. The post-conversion services for which R & G requested compensation met all applicable requirements for allowance of compensation, as set forth in *LaFrance* and *Pine Valley*. The UST does not say otherwise.

In light of the foregoing, the UST's Motion for Reconsideration is DENIED. A separate order in conformity with this Memorandum of Decision shall issue forthwith.

### ORDER

For the reasons set forth in this Court's Memorandum of Decision of even date, the "United States Trustee's Motion to Reconsider Order Allowing Final Application for Compensation and Reimbursement of Expenses of Ropes & Gray LLP as Counsel to the Debtor" is DENIED.